[Civil No. 3693. Filed September 28, 1936.]

[60 Pac. (2d) 1070.]

## METROPOLITAN LIFE INSURANCE COMPANY, a Corporation, Appellant, v. ELSIE REYNOLDS, Appellee.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellant.

Messrs. Silverthorne & Van Spanckeren, for Appellee.

ROSS, J.—This is an action to recover disability benefits provided for by supplementary contracts or riders attached to two policies of life insurance issued by the defendant to Robert C. Reynolds on October 7, 1925. They provide, in substance, that upon proof that the insured, while under sixty years of age, has "become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said Policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months," the defendant will, during the continuance of such disability, waive the payment of further premiums and pay to the insured a stipulated monthly income.

The plaintiff, Elsie Reynolds, is the wife, beneficiary, and guardian of the insured and has brought this action as beneficiary, alleging, in substance, that the insured, Robert C. Reynolds, during 1934 became totally and permanently disabled by bodily injury or disease so that he was prevented from performing work for compensation, and had so continued to the filing of the action.

The defense interposed was that the insured had become disabled as a result of bodily injury or disease occurring and originating *prior* to the issuance of the policies and that the claim was therefore not a risk covered by the policies.

At the trial on this issue, there being no other issue in dispute, it was stipulated that on or about April 30, 1934, the insured was adjudged insane and had since been confined in the state insane asylum, and that he was totally and permanently disabled by reason of his insanity.

The plaintiff's testimony was to the effect that she had known the insured since September, 1920; that she became his wife on January 28, 1927; that he was part owner of a clothing and dry goods store in Glendale, Arizona, known as "The Toggery," and that he had been the active manager thereof as long as she knew him, that is, from September, 1920, until about April 10, 1934.

The certificate of the attending physician, Dr. J. M. Pearson, indorsed on the proof of claim for compensation, stated that the nature of the insured's sickness was general paralysis, and that was his final diagnosis; that his symptoms were mental deterioration, changes in personality, changes in reflexes, etc.; and that his treatment of insured extended from January 15, 1934, to April 23, 1934.

When the plaintiff offered the policies in evidence, the defendant objected on the ground that the complaint failed to show that the insured's disability was the result of a bodily injury or disease occurring and originating *after* the issuance of the policies, which, it is contended, was necessary under the terms of the policies.

At the close of plaintiff's case, defendant moved for an instructed verdict on the ground that the evidence failed to show that the insured's total and permanent disability was the result of bodily injury or disease occurring and originating after the issuance of the policy. This motion was denied.

Defendant thereupon, to support its defense, introduced evidence that the insured's symptoms, as described by Dr. Pearson, showed that his general paralysis was caused by syphilis, and that it was is not disputed by plaintiff, the question being when the disabling disease occurred and originated, whether before or after the policies were issued.

Defendant offered to prove by Dr. Willard Smith that he treated the insured for the disease of syphilis in June, 1913, and for some twelve years thereafter or until in the spring of 1925. This offer was objected to on the ground that it was privileged, the knowledge being obtained while the witness was the insured's physician.

A like offer of the testimony of the two attending physicians at the insane asylum, to the effect that the insured's disease was of long standing, was ruled out for the same reason.

Defendant offered in evidence a written instrument, undated, signed by the insured and by the plaintiff as the "wife and beneficiary," authorizing and requesting any hospital or any physician or any surgeon to give the defendant "all facts and particulars desired with reference to my disability and operation performed on or about any Previous History 19—; including an examination of the Hospital Case History, and written records of Attending Physician's and Attending Surgeon's diagnosis," and agreeing to exempt them from liability for doing so. This offer was, upon objection that it was immaterial and irrelevant and also without date, ruled out.

At the close of the whole case both parties moved for an instructed verdict. The court overruled the defendant's motion and granted plaintiff's.

The assignments question the correctness of the court's action in holding, in effect, that the complaint

stated a cause of action even though it does not allege that the insured's disability was the result of a bodily injury or disease occurring and originating after the date of the policies, and in admitting in evidence the policies over defendant's objection.

Also the rulings rejecting the testimony of Dr. Smith and the two doctors at the insane asylum.

Also the ruling rejecting the waiver of the right to object to privileged communications of hospital, physician, or surgeon.

On the first point plaintiff contends that if the disability was the result of an injury or disease occurring and originating *before* the date of the policies, it was a matter of defense; whereas, defendant insists that the contract of insurance was that the disability must be the result of an injury or disease occurring and originating *after* the date of the policies, and that allegations and proof to that effect were essential elements of plaintiff's cause of action. It is quite apparent that the coverage of the health policies did not extend to and include disabilities that had their origin in bodily injury or disease originating and occurring before the issuance of the policies. It seems, therefore, that it was incumbent upon the plaintiff to allege and prove that his disability was of the kind covered by the policies. However, the defendant did not demur to the complaint and raised the question as to its sufficiency for the first time during the trial and when the plaintiff offered the policies in evidence. The supplementary contract for health insurance is, by its terms, made a part of the life policy to which it was attached. The latter, of course, was not issued until after a medical examination showing the insured was in good health. As is said in *Apter* v. *Home Life Insurance Company of New York,* 266 N. Y. 333, 194

N. E. 846, 848, 98 A. L. R. 1281, where the terms of the policy were the same as the ones here involved:

"The plaintiff must show that he is entitled to payments according to the stipulations of the policies. The coverage of the policies does not include the disability arising from disease which originated before the policies became effective. Perhaps the issuance of the policies after a medical examination may permit the inference that at that time the plaintiff was in good health. Then proof of disability arising thereafter from tuberculosis might be sufficient to cast upon the defendant the burden of producing evidence that the disease originated before the policies were issued."

It also appears that the insured was the active manager of his business for some fourteen years before he became insane, and for about nine years after the issuance of the policies, and it would seem that these facts were sufficient to cast upon the defendant the burden of overcoming plaintiff's *prima facie* case.

While the complaint was defective in the statement of plaintiff's cause of action, in the absence of a demurrer thereto we think it should be held sufficient to admit evidence and, if the evidence showed the plaintiff had a cause of action, no prejudicial error was committed in the admission of such evidence. In other words, the evidence being that the insured was in good health when the policies were issued, and had been able to manage his mercantile business for five years before and nine years after the date of the policies, the plaintiff made out a *prima facie* case that his disability was the result of an injury or disease occurring and originating after the date of his policies and shifted to the defendant the burden to show otherwise.

■ The disabling disease with which the insured was afflicted was insanity. The insured had been able to work and earn money thereby right along until 1934, nine years after the policies were issued. Defendant contends, however, that because the insured's insanity was the result of syphilis with which he was afflicted when the policies were issued, his disability was not covered. If the syphilis was the disabling disease, defendant would be right, but the evidence shows that it was not. The disabling disease occurred and originated nine years after the policies were issued. The medical or pathological cause of the insanity may have been the syphilis, but that would not relieve the defendant from liability. In *Cohen* v. *North American Life & Casualty Co.*, 150 Minn. 507, 185 N. W. 939, the coverage was of a disability "solely as the result of disease which shall originate and begin after this policy shall have been in continuous force for 30 days." This language, as the genesis of the disabling disease, is very similar to the language in defendant's policy. The court said, as against defendant's contention in the Cohen case, that it was not the latent or remote cause of disability that determined the liability:

"The rule of construction is the usual one. It must be favorable to the insured. The insurer intended to give and the insured expected to get indemnity if illness or sickness came after the policy had been in force for 30 days. They were not concerned with the latent or the remote cause of it. The cause of the disease insured against is not mentioned in the policy as a condition of liability. The time when the disease shall 'originate and begin' is made important. The parties had in mind, as the subject of indemnity, disability from illness or sickness or disease first manifesting itself or becoming active after the 30-day period. For this the policy promised indemnity. It did not exempt the company from

liability because the medical cause of the disease causing disability antedated the expiration of the period. A construction making the time of the medical cause of the outbreak of the disease determinative of liability, irrespective of actual illness, sickness or disease, as commonly understood, would make health insurance subject to uncertainty, unattractive to those wanting reasonable health insurance protection, and less marketable. The policy issued by the defendant is fair to the insurer and the insured. As we construe it the defendant is liable, though the medical cause of the disease existed prior to the policy, if the disease or sickness does not manifest itself until afterwards. So the ordinary man wanting health protection would understand it.''

Other cases, under similar contracts, announcing and approving this rule of construction, are: *Provident Life & Accident Ins. Co.* v. *Jemison,* 153 Miss. 53, 120 So. 180; *Smith* v. *Benefit Assn. of Railway Employees,* 187 Minn. 202, 244 N. W. 817; *Dance* v. *Southern Surety Co. of New York,* 16 La. App. 373, 134 So. 725; *Snyder* v. *National Travelers' Benefit Assn.,* 180 Iowa 1344, 164 N. W. 176.

It follows that the court's ruling on the offer of Dr. Smith's testimony, also the doctors at the insane asylum, must be correct for the reason that such testimony was immaterial.

And the same may be said as to the written waiver of the privileged testimony.

We conclude that the defendant had a fair and impartial trial and that no prejudicial error was committed, and therefore affirm the judgment.

LOCKWOOD, C. J., and McALISTER, J., concur.