[Civ. No. 13221.   Second Dist., Div. One.   Sept. 11, 1942.]

WILLIAM E. FOHL, an Incompetent Person, etc., Appellant, v. METROPOLITAN LIFE INSURANCE COMPANY (a Corporation), Respondent.

Hunter R. Skinner and C. P. Von Herzen for Appellant.

Walker, Adams, Duque & Smith, Henry Duque, Mark E. True, Irving M. Walker and Hallack W. Hoag, for Respondent.

WHITE, J. — This action was instituted by Charles E. Fohl, guardian of the person and estate of William E. Fohl, an incompetent, to recover total and permanent disability benefits under a limited payment life policy and under a group policy of insurance, both issued by defendant Metropolitan Life Insurance Company upon the life of said incompetent. In addition thereto, the plaintiff guardian seeks to recover damages allegedly resulting to him personally by reason of the cancellation of the group policy.

Trial before the court sitting without a jury resulted in a judgment for defendant insurance company, from which plaintiff prosecutes this appeal.

Epitomized, the facts are that on December 21, 1921, defendant issued a limited payment life policy in the face amount of $1,500 to William E. Fohl in consideration of the payment of semi-annual premiums in the amount of $24.90. Concurrently with the issuance of the just mentioned policy, and in consideration of the payment of an additional semi-annual premium of $2.67, defendant insurance company issued to William E. Fohl a supplemental insurance agree-

ment covering total and permanent disability. By this last mentioned agreement the insurance company in effect promised that upon receipt at its home office of due proof that the insured was totally and permanently disabled within the meaning and terms of the supplemental agreement, the company would waive all premiums falling due after it had received due proof of such disability and would pay to the insured monthly the sum of $10 for each $500 of the original insurance under the policy. Among others, the supplemental agreement contains the following provision: ". . . if while the above numbered policy is in full force and effect, and before default in the payment of any premium, the company receives due proof that the insured, *as the result of injury or disease occurring and originating after the issuance of the policy,* has become totally and permanently disabled so . . . the company will allow the following benefits . . ."

It appears from the record that on June 15, 1939, the semi-annual premium on the limited payment life policy then due remained unpaid, and by reason of such nonpayment of premium this policy lapsed on July 17, 1939, at which time it had a paid-up value of $1,254, and at the time of the trial the policy was in effect as paid-up insurance in that amount.

The policy of group insurance involved in this litigation was issued by defendant insurance company to the Southern Pacific Company on December 31, 1923. On January 1, 1930, William E. Fohl, being at that time employed by the Southern Pacific Company, received a serial certificate issued to him evidencing his coverage under the group insurance policy in the sum of $250, which coverage was increased to $1,500 on July 1, 1930. The provisions of this group insurance policy relating to total and permanent disability will be hereinafter set forth. William E. Fohl's employment with the Southern Pacific Company terminated on December 23, 1930, and the insurance company canceled the provisions of such policy so far as William E. Fohl was concerned.

By the first cause of action of his complaint and amended complaint, plaintiff alleged the issuance of the limited payment life policy and the supplemental agreement relating to total and permanent disability, and charged that from December 23, 1930, to January 1, 1930 (sic), William E. Fohl was totally and permanently disabled; that he was intermittently totally and permanently disabled from January 1, 1930, to December 23, 1930, from and after which date he has been

continuously totally and permanently disabled. It was alleged that due proof of such total and permanent disability was made to defendant insurance company during the years 1929 and 1930, and again in 1938; that from and after December 15, 1923, the policy by reason of its terms was and is incontestable, and that there was due plaintiff as disability benefits and return premiums paid since he became totally and permanently disabled the sum of $3,390.27.

The second cause of action alleged the issuance of the group policy of insurance to the Southern Pacific Company and the issuance of a serial certificate thereunder evidencing coverage of William E. Fohl on January 1, 1930; that the latter became totally and permanently disabled on December 23, 1930; that notwithstanding due proof of such disability was furnished defendant insurance company, the latter refused to pay disability benefits allegedly due in the amount of $1,542.50. Plaintiff guardian further alleged that he did not discover the existence of this policy until 1938.

By his third cause of action plaintiff alleged that he did not learn of the terms of the group policy until July, 1940; that the group insurance policy contained certain provisions not contained in the serial certificate; that no notice was given to the guardian of the termination of the employment of William E. Fohl; that the cancellation of the serial certificate on December 23, 1930, deprived plaintiff guardian of the privilege of converting said coverage, as provided in the group policy, whereby he was damaged in the sum of $1,500, the amount of such policy.

By its answer defendant insurance company admitted the issuance of the limited payment life policy, the group policy of insurance, and the serial certificate issued thereunder, but denied generally and specifically all other allegations of the complaint, including the allegations that William E. Fohl was disabled and that certain proofs of disability were made and filed. By way of separate and affirmative defenses it was alleged in the answer:

First: That the alleged total and permanent disability from which plaintiff claimed to be suffering was the result of disease occurring or originating prior to the issuance of the limited payment life policy, and hence was not a risk insured against by the supplemental agreement.

Second: That no due, or any, proof of the alleged total and permanent disability of William E. Fohl was received

by defendant until January 10, 1939, and that by virtue of the terms of said supplemental agreement no disability payments were due or payable until six months after the date of receipt of said proof of alleged disability.

Third: That the cause of the alleged disability did not occur while William E. Fohl was insured under the group policy and serial certificate issued thereunder.

Fourth: That William E. Fohl did not become totally and permanently disabled while he was insured under the said serial certificate.

Fifth: That William E. Fohl and Charles E. Fohl, his guardian, were fully aware of the facts surrounding the alleged disability from and after 1930, and that the failure to file due proof of said alleged disability until 1938 constituted an unreasonable delay, as a result of which defendant has been seriously prejudiced in its defense in the within action, wherefore plaintiff and William E. Fohl are and each of them has been guilty of laches.

Sixth: That plaintiff and William E. Fohl are and each of them has been guilty of laches and unreasonable delay by reason of having failed to file proofs of the alleged disability under the group policy and serial certificate issued thereunder, in that they failed to file said proofs until 1939 although fully aware of all the pertinent facts relating to said alleged disability as early as 1930.

During the progress of the trial defendant insurance company moved the court for permission to file an amendment to its answer wherein it alleged by way of further affirmative defense that plaintiff's action herein was barred by the statute of limitations. (Code Civ. Proc., § 337, subd. 1.) The court permitted the amendment to be filed, but refused to make any findings upon the issue thereby tendered.

Stating the evidence, as we are required to do, in the light most favorable to the judgment rendered, we find testimony that prior to the issuance of the limited payment life policy on December 15, 1921, William E. Fohl had been employed as a driver with a bakery concern in the city of Stockton, and to all appearances enjoyed good health. However, on February 21, 1920, nearly two years prior to the issuance of the policy, William E. Fohl was received as a patient at the Clark Sanitarium in Stockton, this being an institution for the care and treatment of mental, nervous, drug and alcoholic patients, where he remained until March 22 of the same

year. Soon after his entrance into the hospital blood samples and specimens of the spinal fluid of Fohl were taken and forwarded to the Stockton State Hospital. Examination of the tests of this blood serum disclosed a two-plus Wasserman, which was equivalent to what is now denominated a four-plus reaction. That this indicated a strongly positive syphilitic reaction was the testimony of one of the pathologists. This diagnosis of syphilis was further confirmed by the analysis of the cerebro-spinal fluid, which gave indication of an equally positive Wasserman reaction. Further testimony along this line need not be here repeated, because appellants, as they put it, "frankly admit that the incompetent was suffering from syphilis prior to the issuance of the policy on December 15, 1921." While making this concession, however, it should be noted that appellants contend that there is absolutely no testimony of any kind or character that the incompetent was suffering from epilepsy or insanity in 1921, or at any time thereafter prior to December, 1928. Some time after March 22, 1920, the incompetent returned to the Clark Sanitarium, where he submitted another blood specimen, an examination of which disclosed a strongly positive Wasserman reaction. Following his discharge from the sanitarium in the spring of 1920, he returned to his home at Stockton, at which time he appeared to be quite nervous, irritable and uncommunicative. He secured employment, however, as a trucker and freight handler. The written application filed by the incompetent for insurance, represented by the policy issued December 15, 1921, did not disclose any of the medical history of and concerning the foregoing ailment.

From 1920 to 1928 the incompetent continued his work as a trucker and freight handler, although it should be stated that his relatives noted a vast difference in his ability to think and remember things as compared with his capacities in this regard prior to 1920. In October, 1928, he came to Los Angeles and resided in the home of plaintiff guardian. The latter was operating a store, where he asked William E. Fohl to assist him, but found that said ward could not concentrate on his work, was unable to make proper change, and was "generally dull." In December, 1928, while at the home of the guardian, the incompetent experienced a seizure, which rendered him unconscious. He was hospitalized in a sanitarium in Los Angeles County, where he remained until June, 1929. During portions of this time he was unable to

carry on a conversation or to comprehend what was being said to him. While William E. Fohl was a patient at the last named sanitarium, guardianship proceedings were instituted by plaintiff guardian, and William E. Fohl was adjudged incompetent on January 14, 1929. It further appears that during the month of June, 1929, following the adjudication of incompetency, his guardian requested information from respondent with respect to the incompetent's rights under the life insurance policy issued in December, 1921. Thereafter, during the last mentioned and succeeding years, the guardian, acting on behalf of the incompetent, attempted on various occasions to obtain for the latter some of the benefits under the disability provisions of the insurance policy. Various letters were exchanged between the guardian of the incompetent, or his attorney, and the insurance company. The insurance company, through the manager of its Pacific Coast head office, advised appellant guardian that the life policy would not be contested, but that if a disability claim were submitted it would be denied "if the cause of the then present claimed disability originated and occurred before the policy date." Premiums on the policy were paid under protest to and including December 15, 1938, and on January 10, 1939, formal proofs of claim were filed with defendant, and upon rejection thereof this action was commenced.

The record indicates that following the appointment of a guardian, the ward, William E. Fohl, continued to improve, and that on or about June 28, 1929, he entered the employ of Southern Pacific Company in San Francisco as a trucker. On January 1, 1930, the group policy hereinbefore referred to was issued. The incompetent continued in the employ of the Southern Pacific Company until September 10, 1930, when he was hospitalized for a surgical operation to remove an ulcer. During this surgery a blood Wasserman was taken, which showed a negative reaction. During his convalescence and post-operation period the incompetent suffered two epileptic seizures, diagnosed as "*petit mal*", and upon his discharge from the hospital on October 27, 1930, he was released by the company physicians for work effective January 1, 1931. However, during the Christmas rush of railroad business he was recalled to duty by the railroad company and continued in such employment from December 2 to December 23, 1930, at which time he left the railroad service and

has not since been gainfully employed. After leaving his employment with the railroad company, the incompetent became violent and uncontrollable, damaging furniture and destroying property at his residence. His condition becoming progressively worse, in June, 1931, he was committed to Napa State Hospital, and since that time he has been an inmate there. Upon his admission to the state hospital, a blood test showed positive and a spinal Wasserman negative, and within seven months thereafter both spinal and blood Wasserman reacted negatively, which last named condition prevailed up to the time of trial. The doctor in whose charge the incompetent was placed at the state hospital diagnosed his condition as "epileptic psychosis with deterioration." The incompetent's epileptic seizures continued unabated, averaging from one to five per month, and the prognosis given by the physicians was that he would never recover, and would continue in his mentally afflicted state throughout his life.

It is first contended by appellant that the disabling clause within the meaning of the disability clause of the policy issued upon the life of William E. Fohl originated and occurred in December, 1928, and within the meaning of the policy became permanent in September, 1930. It is conceded that the right of the insured to recover is dependent upon the definition and interpretation of the words "occurring and originating", as such words appear in the disability supplemental agreement issued by the defendant insurance company and hereinbefore set forth. In other words, the monthly disability payments by defendant insurance company were due the insured when his disability ensued "as a result of injury or disease occurring or originating after the issuance of the policy." Upon this issue the trial court found ". . . that the said William E. Fohl is at the present time and at all times since June 23, 1931, the date of his commitment to Napa State Hospital, has been, totally and permanently disabled so as to be unable to perform any work or engage in any business for compensation or profit, but that said disability is not the result of an injury or disease which occurred and originated after the issuance of said policy of insurance No. 5025602-3-4C. In this connection, the court further finds that said total and permanent disability from which the said William E. Fohl is suffering as aforesaid is the result of a disease or diseases, to-wit: syphilis and syphilitic meningitis, which occurred and originated dur-

ing or prior to the month of February, 1920, and from which said disease or diseases the said William E. Fohl has suffered continuously since said date.''

It is urged by appellant that the evidence introduced by respondent upon which the aforesaid finding was predicated, and which testimony was received in support of defendant insurance company's denial of appellant's first and second causes of action and in support of respondent's first, third, fourth and fifth affirmative defenses, was inadmissible, and that the objection of plaintiff thereto should have been sustained. We are not in accord with this claim. It is true that the life insurance policy contained a clause that it should be incontestable two years from and after the date of its issuance, while the group insurance policy which is the subject of the second cause of action contained a similar provision limiting the contestable period to one year after issuance date. However, we are not here concerned with a case where the defendant insurance company by its proffered evidence seeks to raise any issue of fraud or other deception on the part of the insured in the procurement of the policy. The testimony was relevant and material to show, as contended by defendant, that by reason of the provisions contained in the supplemental agreement, the disability suffered by the insured was not a risk assumed by the insurer for the reason that it resulted from disease occurring or originating prior to the issuance of the policy, whereas the coverage thereunder extended only to disability resulting from disease occurring and originating after the policy was issued. In the instant litigation the coverage of the policy was not extended beyond the terms of the policy, nor did such clause relieve plaintiff from the burden of proving that the disease from which he claimed to be suffering originated and occurred after the execution of the insurance agreement. Such being the case, it follows that defendant insurance company was entitled to rebut this claim by presenting evidence to prove that the disease causing disability had its inception and origin prior to the date the policy was issued. (*Cohen v. Metropolitan Life Ins. Co.*, 32 Cal. App. (2d) 337, 346 [89 P. (2d) 732].) The ruling of the trial court admitting the challenged evidence was proper and correct.

On the question of whether the disability of the insured was the result of injury or disease occurring and originating

after the issuance of the policy, appellant, while admitting that the incompetent suffered from syphilis prior to the issuance of the policy on December 15, 1921, nevertheless contends that the cause of his disability was epilepsy or insanity, and that he suffered from neither ailment prior to or at the time the policy was issued, or at any time thereafter prior to December, 1928; while respondent urges that the evidence establishes the fact that the insured was disabled as a result of syphilis and syphilitic meningitis, and that such diseases originated and occurred prior to the issuance of the policy, thereby precluding the plaintiff from recovering under the policy for such disability. There is in the record evidence that in 1920, prior to the issuance of the policy, the insured was afflicted with syphilis and syphilitic meningitis; that an examination of the spinal fluid of the insured in February, 1920, indicated that there was an involvement of the central nervous system at that time. There was also testimony that syphilitic meningitis could cause a lesion of the brain, and also that such a lesion could produce a psychosis or form of insanity. It was also testified that syphilis may or may not induce that epilepsy.

But though we assume that the epilepsy was caused by syphilitic infection, the question arises as to whether the cause was the original infection in 1920, prior to the issuance of the policy, or the subsequent reinfection in 1931. Though the insured suffered from syphilis in 1920, he nevertheless continued to work, and was gainfully employed until stricken with his first violent attack of epilepsy in December, 1928. In other words, the disease which caused the insured's disability first became manifest or active in 1928, although he was again able to work from June, 1929, until 1930, when he became violent and his condition so bad that it was necessary to confine him in June, 1931. From September, 1930, he was unable to work except for a three-week period in December of that year. Whatever may have been the insured's condition prior to and at the time of the issuance of the policy, it was certainly, according to the evidence, a latent condition which failed to manifest itself so far as disability was concerned for some eight years after the issuance of the policy. As was said in *Reiser* v. *Metropolitan Life Ins. Co.*, 262 App. Div. 171, [28 N. Y. S. (2d) 283], "A disease

does not occur or originate within the meaning of the policy until it becomes a disease in the general acceptation of that term.'' In other words, the beginning of the insured's disability dates from the time when the disabling disease first manifested itself or became acute, and not from the time when the medical cause of the disease may have originated or begun. (*Provident Life & Acc. Ins. Co.* v. *Jemison,* 153 Miss. 53 [120 So. 180, 182].) Whatever syphilitic infection may have been in the body of the insured when he received the insurance policy, according to the evidence it certainly had not manifested itself up to that time, so far as any disability was concerned. It did not disable him from work, as the record shows without contradiction that he continued in his employment and paid premiums on the policy for years after its issuance. (*Smith* v. *Benefit Assn. of Ry. Employees,* (1932) 187 Minn. 202 [244 N. W. 817, 819].) To us it appears to be the better rule that even though the medical cause of the disease which resulted in the incompetent's disability may have antedated the issuance of the policy, where, as here, the disease did not manifest itself for years after such issuance, the plaintiff is entitled to the disability benefits under the policy.

In *Metropolitan Life Ins. Co.* v. *Reynolds,* (1936) 48 Ariz. 205 [60 P. (2d) 1070], the court had under consideration a policy containing, as does the one before us, the provision that the insured was entitled to benefits ''as the result of bodily injury or disease occurring and originating after the issuance of said policy.'' The evidence in the case just cited concededly showed that the general paralysis from which the plaintiff suffered was caused by syphilis. In affirming an instructed verdict for plaintiff, the court said:

''The disabling disease with which the insured was afflicted was insanity. The insured had been able to work and earn money thereby right along until 1934, nine years after the policies were issued. Defendant contends, however, that because the insured's insanity was the result of syphilis, with which he was afflicted when the policies were issued, his disability was not covered. If the syphilis was the disabling disease, defendant would be right, but the evidence shows that it was not. The disabling disease occurred and originated nine years after the policies were issued. *The medical*

*or pathological cause of the insanity may have been the syph-
ilis, but that would not relieve the defendant from liability.
. . ."* (Italics added.)

So, in the case at bar, the medical or pathological cause
of the incompetent's brain lesion, psychosis, epilepsy, or in-
sanity, may well have been the syphilis and syphilitic menin-
gitis from which he suffered prior to the issuance of the pol-
icy, but that does not relieve the defendant insurance com-
pany from liability where, as here, the disabling disease did
not manifest itself for some eight years after the policy
was issued.

We come now to a consideration of plaintiff's right to
recover under the terms of the group policy issued to South-
ern Pacific Company and the certificate issued thereunder to
the insured plaintiff. In this regard the group policy pro-
vides as follows:

"8. Total and Permanent Disability.—

"Upon receipt at the Home Office in the City of New
York, of due proof that any Employee, not working in Mex-
ico, while insured hereunder, and prior to his sixtieth birth-
day, has become totally and permanently disabled, as the
result of bodily injury or disease, so as to be prevented
thereby from engaging in any occupation and performing
any work for compensation or profit, the Company will, in
lieu of the payment at death of the insurance on the life of
the said Employee, as herein provided, pay equal monthly
installments as hereinafter described to the said Employee,
or to a person designated by him for that purpose. . . . The
first monthly installment will be paid upon receipt of due
proof of total and permanent disability, in which event the
insurance hereinbefore provided under this policy, on the
life of said Employee, shall cease to be in force and no fur-
ther premiums will be payable on account thereof."

With reference to its termination, the group policy states:
". . . Upon termination of employment, the insurance of any
discontinued Employee under the Policy automatically and
immediately terminates as of the last day of the insurance
month during which termination of employment occurred,
and the Company shall be released from any further liability
of any kind on account of such person unless an individual
policy is issued in accordance with the above provision."

Manifestly, the provisions of the group policy clearly

establish that to entitle the insured to benefits thereunder his disability must occur while the insurance is in force in his favor. (*Fritz* v. *Metropolitan Life Ins. Co.*, 50 Cal. App. (2d) 570 [123 P. (2d) 622].) █ The burden so to prove rested upon plaintiff, but in the instant case he failed to sustain that burden, for the evidence without contradiction establishes that from July, 1929, to December 23, 1930, the incompetent was employed by and actively working for the Southern Pacific Company, except for a period from the middle of September through the month of November, 1930, during which time he was confined in the Southern Pacific Hospital suffering from duodenal ulcers. During the remainder of the period first abovè mentioned William E. Fohl satisfactorily performed the duties required by his employment, and the records of the Southern Pacific Company disclose that during that period of time he received as compensation for his work the sum of $1,209.40. The record also indicates that Mr. Fohl was laid off by the Southern Pacific Company on December 23, 1930, by reason of a "reduction in force." The record is barren of any evidence from which it could be inferred that his employment was terminated because of his disability or inability to perform his duties with satisfaction to his employer. As heretofore noted, Mr. Fohl was recalled to duty December 2, 1930, during the Christmas rush of business, which warrants the assumption that when the particular occasion for his December employment expired, his employment would naturally be terminated. No citation of authority is necessary in support of the proposition that where a person is ordinarily working at or engaging in an occupation for which he is being substantially remunerated, he cannot be deemed to be totally and permanently disabled. The single limitation upon this rule, to the effect that if by engaging in such occupation the insured is endangering his health or should not in the exercise of common care and prudence engage in such occupation, then the fact that he is actually working does not prevent him from being deemed totally and permanently disabled, is answered in the case at bar by the fact that there is no evidence whatever to indicate that the insured was endangering his health or was not exercising common care and prudence in fulfilling the duties of his occupation as a trucker. As a matter of fact, the evidence affirmatively

establishes that William E. Fohl was physically and mentally able to return to work, and it was recommended by the physicians attending him, under date of October 28, 1930, that he be advised to return to duty as of January 1, 1930, because the ulcer ailment was cured and the epilepsy condition was stationary.

The trial court's findings numbered XIII and XIV, to the effect that plaintiff was not totally and permanently disabled while insured under the group policy, are therefore amply supported by substantial evidence, and must be upheld.

Finally, respondent urges that appellant is precluded from recovery under the limited payment life policy and the group policy as well because of the asserted unreasonable delay in furnishing defendant insurance company with due proof of disability. In this connection, it becomes unnecessary to discuss the claim so far as the group policy is concerned, because as heretofore indicated, we have held upon other grounds that the insured is not entitled to recover disability payments under such policy. As to the limited payment life policy, we are persuaded that respondent's claim cannot be sustained. No attack is leveled at the sufficiency of the evidence to substantiate and support the findings of the trial court that "it is true that during the month of January, 1929, or shortly thereafter, defendant was notified by plaintiff's attorney, Mr. C. P. Von Herzen, that the said William E. Fohl had been adjudged incompetent by the Superior Court of the State of California, in and for the County of Los Angeles, and that plaintiff had been appointed as guardian of the said William E. Fohl. It is also true that defendant, through its duly authorized representatives and agents, refused to recognize the claim which was asserted by plaintiff, as guardian of the said William E. Fohl, during the year 1929 for the disability benefits under policy of insurance No. 5025602-3-4C, and in this connection the court finds that said refusal to recognize said claim was based upon the fact that any disability which allegedly existed at that time was the result of a disease occurring and originating before the issuance of said policy of insurance."

At no time during the negotiations between the parties, extending from 1929 to 1938, did the insurance company request or demand any further or different proof than that

furnished to it through the correspondence and personal conversations with its agents. While the court found that it was not until August, 1938, that plaintiff requested of defendant blank forms for the purpose of making a claim for disability benefits, and that the filing of·such blanks properly filled out in December, 1938, was the first formal written or due proof of the permanent disability of William E. Fohl received by defendant insurance company, nevertheless, when, as the trial court found, upon competent evidence, defendant insurance company refused to recognize claims made, though not formal ones, in January, 1929, and thereafter, and based its denial of such claims on the ground that the asserted disability was the result of a disease occurring and originating prior to the issuance of the policy and did not request or demand more formal or written claims, such action by the insurance company amounted to and constituted a waiver of any further or other proof of disability than that which the insurance company acted upon and rejected. (Ins. Code, §§ 552, 553, 554; *Wilkinson* v. *Standard Acc. Ins. Co.,* 180 Cal. 252 [180 Pac. 607].)

For the foregoing reasons, the judgment is reversed, and the cause remanded with directions to the court below to enter judgment for plaintiff in the amount of the disability payments accruing under the supplemental agreement issued pursuant to the limited payment life policy from June 23, 1931, and for the return to plaintiff by defendant insurance company of. all premiums paid on said policy on and subsequent to June 15, 1931.

York, P. J., concurred in the judgment.

Doran, J., dissented.

A petition for a rehearing was denied October 9, 1942. Doran, J., voted for a rehearing.

Respondent's petition for a hearing by the Supreme Court was denied November 9, 1942. Gibson, C. J., and Edmonds, J., voted for a hearing.