**Appellate Department, Superior Court, San Francisco**

[Civ. A. No. 2608.   May 31, 1960.]

BATTISTA CIMINO, Respondent, v. RESERVE LIFE IN-
SURANCE COMPANY (a Corporation), Appellant.

DEVINE, P. J.—Defendant insurance company appeals from a judgment for plaintiff for hospital and surgical expenses incurred by plaintiff's son, Prospero Cimino, in an action on a policy insuring plaintiff and members of his family for costs of hospitalization and surgical treatment. The policy took effect March 11, 1958, and contained a clause limiting the coverage to hospital confinement "resulting from sickness the cause of which originates while this policy is in force and more than fifteen (15) days after the effective date hereof. . . ." Prospero was hospitalized from May 22 to July 2, 1958, during which time he underwent surgery for osteomyelitis. The action was defended on the ground that the sickness for which he was hospitalized preexisted the date of the policy. Defendant contends that there is no substantial evidence to support the finding that the sickness did not originate prior to 15 days after the effective date of the policy.

On May 17, 1958, Prospero had experienced a high fever, a sharp pain in his right hip, and was unable to straighten out his right leg. He was examined by a doctor on May 20 and was sent to the hospital on May 22. He testified that over a period of two years prior to May, 1958, he had felt the same pain in his right leg in the area where the operation was performed, about once every two months, and that during the month prior to his hospitalization the pain had occurred more often. He had not consulted a doctor until May 20, 1958. Prior to that time he had not been running a fever, and had, during the year previous to his hospitalization, attended classes regularly, played on his high school's football team, and also played basketball and baseball.

Defendant's expert medical witness testified that from his examinations and diagnoses he would say that the deteriorating condition of the bone had been taking place from eight to twelve months prior to the patient's hospitalization. He further testified that it was probable that the pain which Prospero had experienced was due to the existence of osteomyelitis and that the spasms which had occurred during the

six months prior to May of 1958 were consistent with the existence of the disease.

The trial court found that the sickness for which Prospero was hospitalized originated while the policy was in force, and more than 15 days after the effective date thereof. It is, of course, well settled that if there is any substantial evidence in the record to support the findings of the trial court, the judgment must be affirmed.

Defendant contends that the rule in regard to latent or undisclosed disease is that "a sickness should be deemed to have its inception at the time that it first manifested itself or became active, or when sufficient symptoms existed to allow a reasonably accurate diagnosis of the case. . . ." (53 A.L.R. 2d 688; see also *Fohl* v. *Metropolitan Life Ins. Co.*, 54 Cal. App.2d 368, 379 [129 P.2d 24]; *Reiser* v. *Metropolitan Life Ins. Co.*, 262 App.Div. 171 [28 N.Y.S.2d 283, 286].) Defendant argues that Prospero's sickness should accordingly be deemed to have had its inception at the time it first manifested itself in the pains and spasms, and that therefore it must be considered as being within the exclusionary clause of the policy.

In the Reiser case, *supra*, the court stated: "A disease 'occurring and originating' after the issuance of a policy of disability insurance means a disease or infirmity so considerable or significant that it would be characterized as such in the common speech of men. (*Silverstein* v. *Metropolitan Life Ins. Co.*, 254 N.Y. 81, 84 [171 N.E. 914].'' ▮▮ In the case of *Reserve Life Ins. Co.* v. *Lyle,* —— Okla. —— [288 P.2d 717, 53 A.L.R.2d 682], an action involving the interpretation of a policy identical to the one presented here, the court held (at pp. 719, 720) : "The insuring clause of the instant policy declares a positive liability for the expense of hospital confinement 'resulting from sickness,' with limitation or exclusion expressed in these words, 'the cause of which originates while this policy is in force and more than fifteen days after the date hereof.' The language of the insuring clause does not explicitly state an exception or exclusion of liability in a case where the insured was then infected or affected with a specific or particular disease or disability, but declares a liability 'resulting from sickness.' . . . The expression 'hospital confinement resulting from sickness' connotes something more than a mere diseased condition or ill health. It speaks of an active state of illness or condition which manifests itself as the cause of hospital confinement.''

█ Moreover, as was stated in *Milam v. Norwich Union Indemnity Co.,* 107 W.Va. 574 [149 S.E. 668, at 669] : ''The policy specifies sickness contracted; not disease, malady or ailment contracted. While the word 'sickness' is technically synonymous with such words as 'disease,' it is popularly differentiated in this way : One is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected; he is regarded as sick when that diseased condition has advanced far enough to incapacitate him. 'Sickness is a condition interfering with the usual avocations.' (Citing cases). Terms used in a health policy should be considered from the standpoint of popular acceptation and not in the light of scientific definition. . . .''

█ We find the reasoning of the Lyle and Milam decisions, *supra,* persuasive and applicable to the instant case. The trial court could reasonably have concluded from the evidence presented that although Prospero was affected with a condition of osteomyelitis during the period before the policy took effect, this infection was not such as would interfere with his normal activities. In fact, there was evidence that the boy's system had the disease under control and that his condition did not become acute until some injury to his hip caused it to flare up in May of 1958. Under these circumstances it was proper for the court to conclude that the ''sickness'' had its cause in May of 1958 and that the preexisting condition, not having manifested itself by anything more substantial than an occasional pain or spasm, such as any normal person might occasionally experience, particularly after having engaged in football or basketball games, was latent and inactive within the meaning of the Fohl and Reiser cases, *supra.*

The judgment is therefore affirmed.

Caulfield, J., concurred.

Shoemaker, J., dissented.