MUTUAL HOSPITAL INSURANCE, INC. *v.* MORRIS L.
KLAPPER ET UX.

[No. 272A93. Filed October 30, 1972. Rehearing denied November
28, 1972. Transfer denied June 25, 1974.]

*Kothe, Shotwell, Claycombe, Hendrickson & Kortepeter, Robert A. Claycombe,* of Indianapolis, for appellant.

*Morris L. Klapper,* of Indianapolis, for appellees.

BUCHANAN, P.J.—*CASE SUMMARY*—This is an appeal from a summary judgment entered in favor of plaintiffs-appellees, Morris L. and Marietta Klapper (Klapper), based on their claim for Blue Cross benefits for a "pre-existing condition" excluded by a health insurance policy issued by defendant-appellant, Mutual Hospital Insurance, Inc. (Blue Cross). We reverse.

*FACTS*—The facts most favorable to Klapper (appellee) and in support of the judgment are:

On December 15, 1969, a family health insurance policy issued by Blue Cross to Klapper became effective. It contained the following provision:

"ARTICLE XII—BLUE CROSS BENEFITS

\* \* \*

E. Pre-Existing Conditions.
*For any illness,* injury *or condition which existed* prior to the effective date of the membership of the patient, Blue Cross will pay for hospital service only after a lapse of two hundred and seventy (270) consecutive days from the effective date of such membership." (Emphasis supplied.)
(Hereinafter referred to as the "exclusionary clause.")

On January 13, 1970, as the result of a routine eye examination, Klapper's four-year-old daughter (Laurel) was dis-

covered to have contracted an eye condition[1] known as bilateral optic atrophy. The eye doctor estimated that the medical origin of this disease was some time between November of 1967 and July of 1969. However, neither the parents nor Laurel were aware of this disease or condition prior to January 13, 1970. There had been no previous symptomatic manifestations of the disease nor were there any complaints of eye discomfort by Laurel.

Laurel underwent surgery for this condition, being hospitalized from January 21, 1970 through February 11, 1970. Blue Cross denied payment of medical and surgical bills amounting to $892.05 on the ground that the disease "existed" prior to the effective date of the policy (December 15, 1969) and was therefore excluded by the exclusionary clause.

After Klapper filed suit to enforce the denied claim, both parties filed Motions for Summary Judgment agreeing that only a question of law existed. Klapper's Motion was granted and Blue Cross appeals.

## ISSUES

*ISSUE ONE.*  Does an illness "exist" within the meaning of a health insurance policy clause excluding pre-existing conditions, at such time as it becomes known to the insured or is capable of being diagnosed by a physician, or does an illness "exist" at the inception of its medical origin, regardless of when it becomes known to the insured or capable of diagnosis?

*ISSUE TWO.*  Was a material issue of fact before the trial court as to whether Laurel's eye condition was capable of being diagnosed by a physician?

---

1. To avoid repetition and for purposes of this opinion, the words "illness," "injury," and "condition" appearing in the exclusionary clause are used interchangeably throughout.

As to ISSUE ONE, Blue Cross contends that the word "existed" contained in the exclusionary clause must be given its usual and ordinary meaning. If a disease is capable of being diagnosed, even though it has not yet manifested itself in the form of symptoms, it is in existence for purposes of health insurance coverage.

Klapper's position is that an illness is in existence when it first manifests itself or becomes known to the victim, and as the eye condition was not diagnosed until January 13, 1970, after the effective date of the insurance policy, his claim is valid.

As to ISSUE TWO, the parties make no argument. We deem it necessary to raise ISSUE TWO because on the basis of the record there was no consideration by the trial court or the parties of the material issue of fact as to whether Laurel's condition was capable of being diagnosed by a physician prior to the effective date of the policy (December 15, 1969).

## DECISION

*ISSUE ONE*—An illness "exists" within the meaning of a health insurance policy excluding pre-existing conditions at such time as the illness becomes known to the insured or is capable of being diagnosed by a physician. The medical origin of an illness does not determine its existence.

With no pertinent Indiana authority to guide us, we seek succor from other jurisdictions. While there appear to be some cases to the contrary, most states adhere to the rule found in *Southards* v. *Central Plains Insurance Co.* (1968), 201 Kan. 499, 441 P. 2d 808:

> " 'It it generally recognized that provisions in a health or hospital insurance policy requiring that the illness or disease from which the assured suffers originate a specified time after the date of the policy to be within the policy coverage are strictly construed against the insurer, and *the illness, disease, or disability will ordinarily be deemed to have its inception when it first becomes manifest or active or when*

*there is a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease.'"* (Emphasis supplied.) *See* also: *National Casualty Co.* v. *Hudson* (1945), 32 Ala. App. 69, 21 So. 2d 568; *Metropolitan Life Ins. Co.* v. *Reynolds* (1936), 48 Ariz. 205, 60 P. 2d 1070; *Home Life Ins. Co.* v. *Allison* (1929), 179 Ark. 65, 14 S. W. 2d 229; *Fohl* v. *Metropolitan Life Ins. Co.* (1942), 54 Cal. App. 2d 368, 129 P. 2d 24; *Wooten* v. *Life Ins. Co. of Georgia* (1956), 93 Ga. App. 665, 92 S. E. 2d 567; *Mutual Ben. Health & Accident Asso.* v. *Ramage* (1943), 293 Ky. 586, 169 S. W. 2d 624; *Cohen* v. *North American Life & Casualty Co.* (1921), 150 Minn. 507, 185 N. W. 939; *Union Bankers Ins. Co.* v. *May* (1956), 227 Miss. 881, 87 So. 2d 264; *Hilts* v. *United States Casualty Co.* (1913), 176 Mo. App. 635, 159 S. W. 771; *Dowdall* v. *Commercial Travelers Mutual Acc. Ass'n.* (1962), 344 Mass. 71, 181 N. E. 2d 594; *Davidson* v. *First American Ins. Co.* (1935), 129 Neb. 184, 261 N. W. 144; *Reiser* v. *Metropolitan Life Ins. Co.* (1941), 262 App. Div. 171, 28 N. Y. S. 2d 283; *Cudworth* v. *Reserve Life Ins. Co.* (1956), 243 N. C. 584, 91 S. E. 2d 580, *Reserve Life Ins. Co.* v. *Lyle* (1955, Okla.), 288 P. 2d 717; *Smith* v. *Industrial Hospital Ass'n.* (1952), 194 Ore. 525, 242 P. 2d 592; *Wardlaw* v. *Woodmen of World Life Ins. Soc.* (1956), 230 S. C. 234, 95 S. E. 2d 253; *American Casualty & Life Co.* v. *Gueringer* (1947), Tex. Civ. App., 205 S. W. 2d 423; *Wilkins* v. *Grays Harbor Community Hospital* (1967), 71 Wash. 2d 178, 427 P. 2d 716; *Leftwich* v. *Inter-Ocean Casualty Co.* (1941), 123 W. Va. 577, 17 S. E. 2d 209.

Similarly, in *Royal Family Ins. Co.* v. *Grimes* (1964), 42 Ala. App. 481, 168 So. 2d 262, it was held that:

"It is a well established rule of law that the word 'originates,' as appears in the exclusionary provision of the policy, refers ordinarily to the time the sickness or disease is manifested, *although the medical cause existed prior to this time.*" (Emphasis supplied.)

The mere presence of latent germs or seeds of illness in the body prior to the issuance of a policy of health insurance does not alone preclude recovery. There must be something beyond the mere medical origin of the illness. *Dowdall* v. *Commercial Travelers Mutual Acc. Ass'n,*

*supra; Wilkins* v. *Grays Harbor Community Hospital, supra; Royal Family Ins. Co.* v. *Grimes, supra.*

From these cases we deduce the desirable rule for adoption in Indiana to be that for a disease or illness or condition to "exist" in a health insurance policy sense it must have become manifest or active or there must be some distinct symptom or condition from which a physician can make an accurate diagnosis of the disease.

Most cases have adopted the majority rule apparently on the basis that while insurance companies need protection from unscrupulous applicants who would fraudulently attempt to gain coverage for an illness of which they are already aware, such protection need not go so far as to consider a disease to exist at the time of its medical inception. Furthermore, to consider a disease to exist at a time when the victim is blissfully unaware of the medical "seeds" visited upon his body, is to set a trap for the unwary purchaser of health insurance policies.

The majority rule recognizing a disease only to be in existence when it first manifests itself or is known to the victim or is capable of being diagnosed by a physician serves the dual purpose of protecting insurers from fraudulent applicants seeking coverage for known diseases while protecting innocent premium-paying insureds from being deprived of benefits for pre-existing conditions of which they have no knowledge. *Ray* v. *Hospital Care Ass'n.* (1952), 236 N. C. 562, 73 S. E. 2d 475; *Randa* v. *Bear* (1957), 50 Wash. 2d 415, 312 P. 2d 640.

*ISSUE TWO*—It is our opinion that Summary Judgment was improper because there was a material issue of fact as to whether Laurel's eye condition was capable of being diagnosed by a physician prior to the effective date of the policy.

In ruling on a motion for summary judgment, the trial court may not determine questions of fact; rather, the trial court's inquiry is limited to a sole determination of whether or not a factual controversy exists. *Central Realty, Inc.* v. *Hillman's Equipment, Inc.* (1969), 253 Ind. 48, 246 N. E. 2d 383; *Blankenbaker* v. *Great Central Ins. Co.*

(1972), 151 Ind. App. 693, 281 N. E. 2d 496; *Porter Memorial Hospital* v. *Harvey* (1972), 151 Ind. App. 299, 279 N. E. 2d 583. The mere fact that both parties have filed motions for summary judgment does not alone establish the absence of a material issue of fact. *Fischer* v. *Kaylor* (1969), 145 Ind. App. 148, 250 N. E. 2d 19. Moreover, the burden of proof is on the party seeking summary judgment to establish the nonexistence of a material issue of fact. *Ryser* v. *Gatchel* (1972), 151 Ind. App. 62, 278 N. E. 2d 320; *Klinger* v. *Caylor* (1971), 148 Ind. App. 508, 267 N. E. 2d 848; *McNabb* v. *Mason* (1970), 148 Ind. App. 233, 264 N. E. 2d 623; *Doe* v. *Barnett* (1969), 145 Ind. App. 542, 251 N. E. 2d 688.

When a trial court is considering a motion for summary judgment, the contents of the pleadings, depositions, answers to interrogatories, admissions and affidavits must be liberally construed in favor of the party against whom the motion for summary judgment is directed. *Ross* v. *Farmers Insurance Exchange* (1971), 150 Ind. App. 428, 277 N. E. 2d 29. As a consequence, any doubt as to the existence of the material issue of fact should be resolved in favor of the party against whom the motion for summary judgment is directed. *Ross* v. *Farmers Insurance Exchange, supra.*

A review of the Affidavits in support of and in opposition to Klapper's Motion for Summary Judgment discloses only these assertions concerning Laurel's condition: that Laurel had not complained of any eye trouble or that she had any previous diseases of the eye prior to the effective date of the policy; that there were no symptomatic conditions which would have prompted Klapper to take Laurel to an eye doctor for an eye examination; and that this disease was discovered only upon a routine eye examination a few weeks after the effective date of the policy.

The Affidavits further indicate that the eye doctor and the physician who performed the surgery informed the Klappers that Laurel's condition probably had its medical onset at some time between November of 1967 and July of

1969. However, this appears to be nothing more than an estimate by the physician of the date of the *medical origin* of this disease. If the physician was correct that Laurel's condition merely had its medical origin prior to the effective date of the policy, then the disease was not in existence pursuant to the majority rule adopted herein.

However, the majority rule states an alternative element in determining the existence of a disease, *i.e.,* whether or not the disease was *capable* of being diagnosed by a physician prior to the policy's effective date. There is no statement in the Affidavits or elsewhere in the record to indicate that this factual question was before the trial court.

Klapper, in seeking Summary Judgment, had the burden of proving the nonexistence of all material issues of fact as a prerequisite to Summary Judgment. *Ryser* v. *Gatchel, supra; Klinger* v. *Caylor, supra; McNabb* v. *Mason, supra; Doe* v. *Barnett, supra.* This he failed to do. The cases espousing the rule of liability as to when a disease comes into existence also hold that if an insurer seeks to avoid liability on the ground that the disease complained of falls within an exclusionary clause, the burden is on the insurer to establish the facts which bring the case within the specified exception. *Southards* v. *Central Plains Ins. Co., supra; Bankson* v. *Mutual Benefit Health & Accident Ass'n* (1945), 208 La. 1008, 24 So. 2d 59; *Wooten* v. *Life Ins. Co. of Georgia, supra; Collins* v. *United States Casualty Co.* (1916), 172 N. C. 453, 90 S. E. 585.

We interpret these cases as meaning that this principle comes into operation subsequent to a determination as to the propriety of Summary Judgment, *i.e.,* as a defense at trial after a finding by the trial court that a material issue of fact exists in this respect. This case should, therefore, be reversed and remanded to the trial court to determine if a material issue of fact exists as to whether Laurel's eye condition was capable of being diagnosed by a physician prior to the effective date of the policy.

Summary Judgment is therefore reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.

Sullivan and White, JJ., concur.

NOTE.—Reported in 288 N. E. 2d 279.