(121 So. 88)

INDEPENDENT LIFE INS. CO. v. CARROLL. (6 Div. 322.)

Supreme Court of Alabama.    March 21, 1929.

**80**

Huey & Welch and W. G. Stone, all of Bessemer, for appellant.

Lipscomb & Lipscomb, of Bessemer, for appellee.

GARDNER, J. Appellee was named beneficiary in a policy insuring the life of his wife, Josephine Carroll, who died August 8, 1927, and brings this suit to recover thereon. There was verdict and judgment for plaintiff, from which defendant appeals.

█ The counts of the complaint substantially conform to the Code form (section 9531, form 12, Code of 1923), and the demurrer thereto was properly overruled. National Life Ins. Co. v. Puckett, 217 Ala. 110, 115 So. 12, where attention is directed to the change in the Code form by omission of averment as to the terms of insurance. See, also, American Nat. Ins. Co. v. Moss, 215 Ala. 542, 112 So. 110. The case of Pence v. Mut. Benefit Ins. Co., 180 Ala. 583, 61 So. 817, cited by counsel for appellant, construed the form as then existing in the Code of 1907, and is therefore without application.

The criticism of count 1, based upon the case of Oberhaus v. State ex rel. McNamara, 173 Ala. 483, 55 So. 898, is without merit, and needs no discussion here.

The policy sued upon was of date April 4, 1927, and in the sum of $225.00. There was no other policy or contract insurance of any character. We are therefore unable to see the usefulness of count 1, which seeks recovery upon a policy of March 1, 1926, and in the sum of $250.00, and it would seem may well be eliminated.

Count 2 went beyond the Code form, and made the policy an exhibit thereto. We find no material variance in the averments of the count and the policy thus exhibited. Count 2 therefore answers all the purposes of the case. The pivotal question, however, turns upon the merits of the case as presented by the pleadings and the proof in support thereof.

Special pleas were interposed incorporating warranties contained in the policy as to the "sound health" of the insured at the time of its issuance, and also a "warranty" on the part of the insured that she had never had any "disease of the heart." The several pleas then allege that the insured at the time of the issuance of the policy was suffering with chronic valvular heart disease, cardia nephritis, or cardia asthma, and each of which increased the risk of loss. No replications were filed by plaintiff to these pleas, but issue was taken thereon and the cause submitted to the jury upon the issue thus joined.

It is first insisted the affirmative charge was due defendant, based upon the testimony of Dr. Denson, to the effect that during the year 1926 insurer was suffering from a chronic valvular heart disease, which continued to her death by apoplexy on August 8, 1927.

We enter into no detailed discussion of the evidence. Suffice it to say it has been carefully considered by the court in consultation. █ The evidence of plaintiff, husband of the insured, may properly be considered as presenting some conflict, however slight, with the testimony of Dr. Denson. The scintilla rule of evidence prevails in this state, and, in the light of this rule, we entertain the view a jury question was presented. Mut. Life Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649; Padgett v. Sov.

Camp, W. O. W., 218 Ala. 255, 118 So. 456; Metropolitan Life Ins. Co. v. Hyche, 214 Ala. 447, 108 So. 40.

It is next insisted that the motion for new trial should have been granted upon the ground that the verdict is contrary to the great weight of the evidence. While fully mindful of the difference to be accorded the ruling of the trial court and that the power of this court in this respect should be exercised with the greatest caution, yet we are persuaded that under the proof here presented the new trial should have been awarded, and that there was reversible error in its denial. Dr. Denson was the family physician, and he made several visits to see the insured during the year 1926. He testifies, positively and emphatically, that she was suffering from chronic valvular heart disease and asthma, and he prescribed digitalis. His frequent visits to insured were corroborated by plaintiff. Such disease contributes to apoplexy. He "considered her case serious," and he was equally emphatic that this condition continued to the time of her death, as "there is no cure for chronic valvular heart disease." The evidence of this witness as well as that of Dr. Durrett, examined on plaintiff's behalf, discloses that such disease increases the risk of loss, and there is no occasion for resort to any judicial knowledge. Brotherhood of Rwy. Clerks, etc., v. Riggins, 214 Ala. 79, 107 So. 44; Heralds of Liberty v. Collins, 216 Ala. 1, 110 So. 283, Dr. Durrett saw insured only a few hours before her death, but he concedes that, if in fact she had chronic valvular heart disease in 1926, this, in his judgment, "produced the condition from which she died." He made, as attending physician, two reports. Each gave apoplexy as the primary cause of death, but in the first report cardia nephritis was given as the contributing or secondary cause, and in the second the secondary cause was cardia asthma. He knew nothing of the previous history of the case, and had no opportunity to examine her for chronic valvular heart disease. Whether the heart trouble was the primary or secondary cause of the death of insured was immaterial. Riggins Case, supra. Dr. Durrett's testimony read in connection with Dr. Denson's in fact tends strongly to corroborate the latter. Dr. Denson, as previously stated, was plaintiff's family physician at the time testified about, and was entirely without interest in the result. His testimony was clear and emphatic and consistent throughout. His qualifications were not questioned, but admitted, and his evidence as an expert was entitled to great consideration. Robinson v. Crotwell, 175 Ala. 194, 57 So. 23.

Under the issues presented, we are constrained to hold that a new trial should have been granted on the ground above indicated, and that for its refusal the judgment should be reversed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.