(130 So. 520)

# INDEPENDENT LIFE INS. CO. v. VANN.

6 Div. 713.

Court of Appeals of Alabama.

Oct. 28, 1930.

Huey & Welch and W. G. Stone, all of Bessemer, for appellant.

Lipscomb & Lipscomb, of Bessemer, for appellee.

SAMFORD, J.

The appellant having prepared and filed a brief in accord with rule 10 of the Supreme Court, and no brief for appellee having been filed, the statement of the case and the points relied on as error are taken as accurate and sufficient for decision.

The claim by appellant that the complaint is repugnant, in that it is alleged that the policy sued on was issued on, to wit, October 1st, when the policy made a part of the complaint bore date of October 8th, is without merit. Where the date in a policy sued on is under a videlicet, the time need not be proved exactly as alleged. Alexander v. Woodmen of the World, 161 Ala. 561, 49 So. 883.

Plea 3 was subject to demurrer, and such demurrer was properly sustained by the court. It is the law, as contended by appellant, that a clause in a life insurance policy, to the effect that no obligation is assumed by the insurer, unless on the date of the delivery of the policy insured is alive and in sound

health, is held to be a warranty within the terms of section 8364 of the Code of 1923. Authority for the foregoing is to be found in the case of Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714. The Supreme Court, in the case of Mutual L. Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A. L. R. 649, was at some pains to point out the distinction between a warranty and a condition precedent as applied to ·a life insurance policy, in view of section 8364 of the Code of 1923. Since that decision the courts .have held that the representation, either in the application or policy, one or both, relating to the health of the insured at the time of the delivery of the policy, is a warranty and not a condition precedent. Being a warranty and a part of the contract, it must be construed in connection with the whole contract, which stipulates: "This policy shall be incontestable from the date of its issue except for non-payment of premiums, actual and intended fraud," etc. The whole policy was incorporated and made a part of the complaint. Therefore a plea which sets up as a defense that clause in the policy which says: "No obligation is assumed by the company unless on the date and delivery hereof the insured is alive and in sound health," etc., must go further and aver actual and intended fraud. This, we take it, was the view taken by the court as to pleas 3, 4, and 5.

██ For reasons above given in passing on pleas 3, 4, and 5, the court did not commit error in refusing defendant's charges 3 and 4. These charges ignored the clause in the policy in which the parties contracted: "This policy shall be incontestable from the date of issue except for non-payment of premiums, actual and intended fraud or for engaging in military or naval service," etc. If the delivery of the policy during the good health of the insured was a condition precedent, the contention as to error in refusing the written charges would be sound, but, as has already been seen, the clause is held to be a warranty, which may be waived by the terms of the policy or otherwise. The rights of plaintiff to an incontestable policy, except for actual or intended fraud, is not based on waiver or estoppel, but on original contract entered into by the parties. Mutual Life Ins. Co. v. Mandelbaum, supra. It does not appear that the policy contract in Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714, and other cases of like conclusions, contained the same or similar incontestable clauses as appear in the policy contract in this case, and therein lies the differentiation between those cases and the one at bar.

██ Charges 7 and 8, refused to defendant, are insisted upon, in brief of counsel, as error. If this court is correct in the conclusions herein above stated, then the trial court was not in error in refusing charges 7 and 8. As was pointed out in the opinion in the case

of Sovereign C., W. O. W. v. Hutchinson, 214 Ala. 540, 108 So. 520, section 8049 of the Code of 1923, as applicable to life insurance contracts, has been qualified by section 8364 of the Code 1923. If, therefore, the policy here sued on had entirely omitted the clause as to delivery in good health, it would not be questioned that in order to avoid the policy on the ground of ill health at the time of delivery, there must have been actual fraud, i. e., there must have been knowledge of the facts or such negligent ignorance, as to amount to the same thing. It was in the power of the parties to have contracted without reference to the health of insured at the time of delivery of the policy, and, having placed the incontestable clause in the policy as above quoted, a delivery of the policy and the acceptance of the premium constituted a binding contract. In construing these life insurance contracts, it must always be borne in .mind that the contract is prepared by the insurer and is rarely ever the subject of construction until the lips of the insured are sealed in death; therefore every intendment must be resolved in favor of the insured and against the company. If other than the above is not the true meaning of the policy, subsequent policies may be easily changed so as to leave ĥo room for doubt.

¯ ██ While the courts have said that certain diseases are, as matter of law, diseases which tend to shorten life and to materially increase the risk, in policies of life insurance, this court is not willing to add to the list the disease which at present is called "Ulcerated Stomach." Hence charge 16 was properly refused.

For reasons above given, the court did not err in refusing to defendant charge "C."

██ If it may be said that refused charge 10 is not in conflict with the foregoing opinion, at least it was misleading and tended to confusion.

██ The correct principles of law embraced in refused charges 5, 14, and 15 were covered in the written charges. Moreover, charges 14 and 15 were couched in such language, and omitted the incontestable ·clause in the policy in such way as that such charges would tend to confuse the minds of the jury and were properly refused. A safe rule in passing on requested charges is: Where the charge requires further explanation by the court in order to make its meaning clear so as not to be misleading, the charge should be refused.

██ It is true, as said in brief, that: "A videlicet will not avoid a variance or dispense with exact proof, in an allegation of a material matter." But, where the videlicet relates to the date of delivery of a contract, and the evidence is in conflict as to the true date, a charge which seeks to conclude the plaintiff by reason of the date written at the

end of the contract is erroneous. A written agreement is valid, although undated, and in this case it was admitted by defendant that it was the custom of the company to affix dates to policies at the home office and deliver them on dates therein named. So in this case it is immaterial that the policy is not executed on the day of its date and being averred under a videlicet that its date was, to wit, October 1st, a policy bearing date of October 8th, and in all other respects the same as appeared in the complaint, and, it being testified to that the delivery took place October 1st, there was no such variance as entitled the defendant to the general charge. 13 Corpus Juris, 308 (132).

To make our ruling regarding the policy clear, the complaint alleged that the policy was issued on, to wit, October 1st; the policy sued on was made a part of the complaint; the policy bore date of October 8th; the plaintiff testified that the policy was delivered and the first premium paid October 1st. The definite allegation was in the complaint that the policy was issued October 1st. Plaintiff introduced testimony tending to prove this fact. The date affixed to the policy is not conclusive as to plaintiff. The affirmative charge, therefore, was properly refused.

There is no such state of facts in this case as would justify this court in holding that such a preponderance of the evidence sustained the pleas of defendant as that the jury rendered a verdict which was wrong and unjust. In fact, there are many fair inferences to be drawn from the facts to sustain the finding of the jury to the effect that the insured did not with knowledge of his condition or negligence in regard thereto perpetrate actual or intended fraud in the procurement of the policy. Even the doctors who attended insured did not know his malady until after death and autopsy. Prior to this illness insured had been exceptionally free from disease or other ailment. There is no evidence that the seriousness of his condition was brought home to him, except perhaps the fact that he was taken to the hospital, and that fact does not constitute prima facie a serious malady. The court did not commit error in refusing the motion for new trial. McMahen & Sons v. L. & N. R. R., 21 Ala. App. 66, 106 So. 56.

W. W. Bean, a soliciting agent for defendant company, who took the application for the policy, delivered it, and collected the premium due, was asked many questions on cross-examination, testing his memory, what he said at the time of delivering the policy, where it was issued, when and where delivered, etc., objections and exceptions were made to a score or more of these cross questions, but, as we see it, while some of the questions called for immaterial evidence, we do not find any error of a prejudicial nature

in any of his rulings during the cross-examination of the witness Bean.

While the plaintiff's witness, Mrs. Nellie Trammel, was being examined on rebuttal, she was asked by plaintiff's counsel this question:

"I will ask you if it isn't a fact that Dr. Durrett said at that time this, or this in substance, that he didn't know what was the matter with him, and that was the reason he was sending him to the hospital?" To which she answered: "Yes."

When the plaintiff was being examined as a witness, she was asked by her counsel: "I will ask you Mrs. Vann if in a conversation with reference to the fixing up the papers just testified about that Dr. Durrett didn't tell you in substance this, that he had never treated your husband for any sickness, or given him any medicine prior to the third day of October, 1928?" To which she answered: "Yes."

This witness was also asked this question: "Now, I will ask you, Mrs. Vann, if, in that conversation or in the conversation during that time, if he didn't tell you that he didn't know what was the matter with your husband?" To which she answered: "Yes."

Witness was also asked this question: "I will ask you if Dr. Durrett in substance didn't make this statement when he was filling out the papers, that he had never prescribed any medicine and didn't give him a drop of medicine in his life and didn't know what was the matter with him?" To which she answered: "Yes."

All of these questions were properly and promptly objected to, and exceptions were legally reserved. Dr. Durrett was the attending physician of the insured during his last illness, and had given testimony in behalf of defendant to the effect that he had treated insured on former occasions, and that during the month of September, just prior to his death, he had treated insured for ulcerated stomach, and that about October 1st he diagnosed the malady as ulcerated stomach, and ordered insured to the hospital. Unless this evidence was for the purpose of impeaching the testimony of Dr. Durrett, it was hearsay and inadmissible. If it was for the purpose of impeachment, it was not admissible without a proper predicate having been laid to Dr. Durrett while he was testifying, calling his attention to the statement claimed to have been made by him, the time, place, and the persons present. One of the grounds of objection to the above questions was that a proper predicate had not been laid. The court erred in overruling these objections. Johns Undertaking Co. v. Hess-Strickland T. Co., 213 Ala. 78, 104 So. 250.

The predicate laid to Dr. Pool, a witness for defendant, as follows: "Dr. Noland and I discussed the cause of this man's

death after he was dead. In that discussion I did not make the remark in the presence of Mrs. Vann that we could not tell what he died with. I do not remember another lady being there with Mrs. Vann, Mrs. Hammil being present at that time. I do not remember that anybody was present or not at the time we discussed it. I did say there at the time that there was some question as to the diagnosis, I mean by that that there was some question as to what caused his death," was sufficient. But the question asked the impeaching witness, to wit: "I will ask you if you heard Dr. Poole say in substance, or say this, that he didn't know what he died with?" does not comply with the rule. The statement imputed to the witness must be substantially the same both in the predicate and in the question asked the impeaching witness. Terry v. State, 16 Ala. App. 430, 78 So. 460.

There were other exceptions to testimony not necessary here to discuss, but we have examined them, and they were either free from error or entirely harmless.

For errors pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.

RICE, J., concurs in the conclusion.