PRUDENTIAL INS. CO. OF AMERICA v. ELIAS.

No. 29559.   Dec. 10, 1940.

Rehearing Denied Jan. 28, 1941.

Application for Leave to File Second Petition for Rehearing Denied Feb. 11, 1941.

*109 P. 2d 815.*

N. A. Gibson, Jr., of Muskogee, for plaintiff in error.

T. Austin Gavin, of Tulsa, for defendant in error.

BAYLESS, C. J.   The Prudential Insurance Company of America, a corporation, appeals from a judgment of the district court of Creek county in favor of Camille K. Elias. The cause was tried by the court, and in our opinion is a cause properly triable to a jury. Therefore, if there is any evidence to support the finding of the court, the issues of fact are conclusive, as found by him.

The company issued a policy of annuity insurance to Elias, and the purpose of his action is to enforce a provision therein for the waiver of further premiums under stated conditions. From our investigation of the record, we think the evidence is not in conflict insofar as the facts material to the issue are concerned, and for that reason the issue here is one of law.

About 1918, Elias suffered an attack of influenza. In 1920, he was admitted to Mayo's Hospital at Rochester, Minn., for examination, at which time his condition was diagnosed as "post influenzal neurosis." In 1934, he was admitted to Mayo's Hospital again, and a second diagnosis was made, "* * * of epidemic encephalitis, narcolepsy and Parkinson's Syndrome, and also trichophytosis of the feet and buttocks," and the physician connected with Mayo's, who gave

the deposition, attributed the encephalitis, narcolepsy, and Parkinson's Syndrome to the attack of influenza in 1918. In 1935, the policy involved was issued, and at that time Elias passed a satisfactory physical examination. At that time he had some indication of the tremor that later developed and produced his disability; and, in 1936 or 1937, the tremor in his arm developed to the extent that he became totally and permanently disabled, and that was his condition at the time of the filing of the suit and the trial.

The sole question for us is whether the disability arose under the terms of the policy. The policy reads:

"Subject to the limitations and requirements stated below, the Company, upon receipt at its Home Office of due proof that the Annuitant has become totally and permanently disabled as hereinafter defined, will as specified in paragraph (e) below, waive the payment of certain premiums otherwise payable under this policy.

"(a) Period Covered. The disability must be due to disease or bodily injury originating after the payment of the first premium under this Policy, * * *."

The evidence showed that the disability arose from the influenza suffered in 1918, that is to say, from a disease that did not originate after the payment of the first premium. The trial court was of the opinion that the provision of the policy with respect to incontestability applied to the defense offered, and found for the plaintiff. We quote a portion of the journal entry of judgment:

"* * * The court is of the opinion that under the incontestable provision of the policy the defendant is precluded from defending in this case wholly upon the ground that the illness originated prior to the payment of the first premium of said policy when no question of fraud on part of the plaintiff in obtaining the policy was raised in the trial of the case, and no effort was made to cancel the policy on account of fraud."

Thus we have the controversy between the parties: Defendant says the disability, which arose after the policy went into effect, is the result of a disease that originated prior to the payment of the first premium; whereas, plaintiff says all of that is true, but that under the terms of the policy, after the policy has been in effect two years, the company is precluded from contesting on that ground.

We may say now, for a better understanding of the issues, that defendant does not charge plaintiff with bad faith in the nature of concealment of condition, or procurement of policy by misrepresentations, or by fraud; and no effort is made to cancel the policy; but it asserts only that the disability arose from disease existing prior to the payment of the first premium, and that such a disability is expressly excluded from the coverage as the basis for the waiver of future premiums.

We think the quoted provisions of the policy governing the conditions and limitations under which the company will waive the payment of further premiums are so clear and unambiguous as not to be in need of resort to extraneous evidence or facts to aid in the understanding of their meaning. We do not think it is necessary to spend time in the discussion of the meaning of the provisions.

There appear to be some differences of opinion in the decisions of the various courts respecting the effect and the applicability of incontestability clauses. Couch, Cyc. of Ins., vol. 8, page 6988, § 2155e, and pocket supplement. A great deal of this may be attributed to the variety of policy forms and terms, but undoubtedly some of it is wholly attributable to the differing views of the courts. We are impressed with the logic and reasonableness of the rule that the incontestability clauses do not preclude the defense that the disability for which benefits are claimed is not covered by the terms of the policy. In other words, it is always permissible to question whether benefits sought come within the terms of the coverage although no contention is made concerning the validity of the policy.

This thought has been well expressed by the Court of Appeals of New York in Apter v. Home Life Ins. Co., 266 N. Y. 333, 194 N. E. 846, 98 A.L.R. 1281, in the following language:

"The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage, the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken. Matter of Metropolitan Life Ins. Co. v. Conway, 252 N. Y. 449, 169 N. E. 642. From the inception of the policies the defendant excluded from their coverage disability which originated before the policies became effective. The plaintiff never acquired any insurance against such disability. * * * A claim that the coverage of the policies includes no disability excluded by its terms is in exact accord with the written contract of the parties and is not in conflict with the provision that the validity of the written contract may not be contested."

The Court of Appeals of Ohio expressed the same thought in John Hancock M. L. Ins. Co. v. Hicks, 43 Ohio App. 242, 183 N. E. 93, when it said:

"The incontestable clause does not have the effect of enlarging the diseases or bodily injuries for which the company agrees to compensate the insured. * * * the company by the incontestable clause has not waived the necessity of allegation and proof that the injury, loss or risk claimed is the subject of the contract. It was incumbent upon the plaintiff to plead and prove that the insured was at the time of the filing * * * suffering from a disease contracted after the date of the issuing of the policies. And the defendant company had the right without respect to the incontestable clause to put the plaintiff upon such proof."

It seems to us illogical to say that a company will issue a policy of insurance wherein it is expressly stated that it will give certain benefits upon the happening of a clearly defined future event, and to further say that because it includes in the policy an agreement that after the policy has been in effect a certain period of time it will not contest the right to the benefits provided upon the grounds of the invalidity of the contract that it thereby agrees to deny itself the right to ask whether the clearly defined future event has happened. We are asked to hold that the incontestability clause has the effect of making the company say: We assume certain stated coverages for a period of two years, and coverages without limit thereafter, but we believe it is more logical to hold that the company may question whether a claim comes within the expressed coverage of the policy at any time a claim for benefits is made.

We think the meaning of the incontestability clause herein is that after the stated period has passed, the coverage stated in the terms of the policy becomes binding and conclusive, and that anything that happened or existed at the time the policy was written, or prior thereto, that would have given the company cause to decline to write the policy or would furnish cause to cancel the policy after it was written, or anything that happened within the stated period after it was written that would furnish cause to seek to cancel the policy, cannot be advanced as an excuse for not paying the claims for benefits within the coverage stated in the policy. In other words, after the stated period, it becomes a valid contract affording the protection stated in its terms so long as premiums are paid. Apter v. Home L. Ins. Co., supra, John Hancock M. L. Ins. Co. v. Hicks, supra, and Couch, Cyc. of Ins., supra.

We are convinced after a careful study of the decisions cited by the plaintiff that the rule we are announcing herein is the better rule, and that sufficient differences of policy terms and a difference of opinion between us and those courts justified us declining to follow a different rule. This is especially so of the decision in United States v. Patryas, 303 U. S. 341, 82 L. Ed. 883, involving the construction of a policy

of reinstated risk insurance under the amended statutes of the United States. We think the issue in that case differed so greatly as to almost destroy any analogy, and we are convinced that much that was said with respect to that issue would not have been said with respect to the issue before us.

Plaintiff cites and relies upon Prudential Ins. Co. v. Moseley, 179 Okla. 451, 66 P. 2d 35, as being a settlement of the contention herein in its favor. We do not agree. There the policy was issued, and premiums were paid for a period of time sufficient to bring into effect the incontestability clause, but thereafter premiums were not paid for several months, and insured died. The only contest permitted by the clause was nonpayment of premiums, and this defense was set up. It was sought to avoid the effect of nonpayment by insisting that insured became wholly disabled within the meaning of the policy prior to the first default in payment of premiums, by reason of which the terms of the policy excused further payment of premiums and the policy did not lapse. By the terms of the policy the disability that would waive payment of premiums should come into existence after the policy was issued, or, stated another way, disability existing prior to the issuance of the policy was expressly excluded from coverage. It was contended that the incontestability clause precluded any inquiry into when the disability arose. Evidence of the date of the inception of the disability was held admissible because if the disability antedated the policy it could not, by the terms of the policy, waive payment of premiums, but if the disability arose after the issuance of the policy, it would, by the terms of the policy, excuse payment of further premiums.

It seems to us that the only difference between that case and the one before us is this: There the insured did nothing to establish or enforce the waiver of further premiums because of his disability, but stopped paying; here the insured had not stopped paying premiums but brought this suit to establish his right to stop paying further premiums. If it could be shown in that case that the disability antedated the policy to prove that the right to cease further payments had not arisen, it seems entirely logical to say it can be shown herein that the disability followed a disease that originated prior to the issuance of the policy and does not furnish excuse for ceasing payment of further premiums.

The judgment is reversed, and the cause is remanded.

WELCH, V. C. J., and OSBORN, HURST, and NEFF, JJ., concur. RILEY, DAVISON, and CORN, JJ., dissent. GIBSON, J., absent.