282 So.2d 308

**In re The NATIONAL LIFE & ACCIDENT INSURANCE COMPANY**

v.

**Arthur MIXON.**

**Ex parte Arthur MIXON.**

**S C 117.**

Supreme Court of Alabama.

Aug. 30, 1973.

Brobston & Brobston, Bessemer, for petitioner.

Lange, Simpson, Robinson & Somerville, Birmingham, for respondent.

HEFLIN, Chief Justice.

This case comes before this court by way of a petition for a writ of certiorari to the Court of Civil Appeals wherein the petitioner-appellee-complainant, Arthur Mixon (hereinafter referred to as "insured") avers that the holding of the Court of Civil Appeals is in conflict with a prior decision of this court, Independent Life Insurance Co. v. Carroll, 222 Ala. 34, 130 So. 402 (1930).

The facts giving rise to the instant controversy have been stipulated to by both parties. On October 23, 1961 the respondent-appellant-defendant (hereinafter referred to as "insurer") issued a policy of insurance to the insured, at which time the insured was suffering from glaucoma and was totally and permanently blind in his right eye. The insured is totally and permanently blind in both eyes at present, and is, and has been *since before* the issuance of this policy, under the care of Dr. James B. Collier for the treatment of such disease.

The pertinent policy provisions under which the insured claimed benefits for to-

tal loss of eyesight, and under which the insurer denied his claim are as follows:

> "*Benefits for loss of Eyesight or Limbs* —Upon receipt during the lifetime of the Insured of due proof that the Insured has suffered (a) . . ., or (b) the complete and irrecoverable loss of sight of both eyes prior to attainment of age 70, or (c) . . ., the Company, will pay, in case (a) or case (b), a sum equal to twice the Amount of Insurance . . ..
>
> *In all cases, benefits under this provision shall be allowed only if the loss* (1) occurs while no premium is in default beyond the grace period, and (2) *is caused solely by disease or injuries contracted or sustained after the Date of Issue.* Such benefits shall not be allowed if any such loss is intentionally self-inflicted or if it results from an act of war . . . while the Insured is in the armed forces of any country, international organization or combination of countries.
>
> *Definition—* . . ..
>
> *Premium—* . . ..
>
> *Reinstatement—* . . ..
>
> *Age—* . . ..
>
> *Incontestability*—This policy shall be incontestable one year from the Date of Issue, except for non-payment of premiums."[1] (Emphasis supplied)

The case was tried in the Circuit Court of Jefferson County, Bessemer Division, without a jury, upon the stipulated facts, wherein judgment was rendered for the insured in the amount of $1,000, the total damages claimed. This judgment was reversed and rendered in favor of the insurer by the Court of Civil Appeals, 50 Ala. App. 697, 282 So.2d 306, holding that the incontestable clause did not preclude the insurer from asserting the defense of pre-existing disease, and, therefore, under the stipulated facts, the insurer was not liable under its policy, as it had never assumed the risk of loss of eyesight due to a disease which existed on and prior to the issuance date of the policy.

In *Carroll*, supra, the beneficiary of a life insurance policy brought suit claiming benefits under said policy. The policy contained a clause which stated that "no obligation is assumed by the company unless on the date and delivery hereof the insured is alive and in sound health." The policy also contained the following incontestable clause:

> "This policy shall be incontestable from date of issue except for non-payment of premium, actual and intended fraud or for engaging in military or naval service in time of war, without permission from the company; if insured died by his or her own hand within one year from date thereof, whether sane or insane, or resulting from a crime or any attempt thereat only one-half of the premium actually paid to the company will be the company's liability hereunder."

The insurer sought to avoid liability under the policy by setting up the fact that the insured was suffering from a disease at the time of issuance and delivery of the policy. However, this court held that the incontestability clause precluded such a defense, reasoning that the "usual rules of construction governing the interpretation of insurance policies are applicable to the construction of incontestable clauses therein, and if there is reasonable doubt as to the extent of the application of the incontestable clause it must be solved in favor of the beneficiary."

This court had occasion to consider a similar issue one year later in the case of *Moore v. Bankers' Credit Life Insurance*

---

1. It should be noted that the only exception contained in the incontestable clause pertained to non-payment of premiums.

Co., 223 Ala. 373, 136 So. 798 (1931). In *Moore* the policy in question contained an incontestability provision which did not include suicide in the exceptions from its operation.

The policy in *Moore* also contained a suicide clause which stated that "[i]f the insured shall within two years from the issue date of this policy, die by his or her own hand, or act, whether sane or insane, this policy shall be valid only for an amount equal to the premiums received on the policy."

The insured in *Moore* took his own life within the two year period, but suit was not brought until after the expiration of the two year period. The beneficiary contended that because suit was not brought until after the expiration of the two year period, the case was governed by the incontestable clause, and being so governed, the insurer could not contest liability under the policy by setting up suicide as a defense. This court rejected this contention, holding that the incontestable clause did not preclude the defense of suicide, as death by suicide was not a risk assumed by the insurer,[2] exactly the same contention asserted by the insurer in the instant case.

This court in *Moore* found no conflict between the suicide and incontestable clause, observing that:

"In strictness, they relate to different subjects. One relates to engaging quality of the contract, and the other to *definition of risk*. Observing the distinction, at the end of [two years] the company was bound to the full extent of the risk it assumed, *but it was not liable on a risk which it stipulated it would not assume, [i. e., death by suicide] and the defense that the assured committed suicide no more contested the policy than a defense that he is still alive*." (Emphasis added)

This court went on to conclude that to hold that there was a conflict between the incontestable and suicide clauses and that the general provision of the incontestable clause supersede and nullify those of the suicide clause would do violence to the clear intention of the parties plainly and unambiguously expressed.

It would appear on the surface that *Carroll* and *Moore* are in conflict with each other since in both the policy contained an incontestable clause. However, different treatment was given because in *Carroll* the clause that "no obligation is assumed by the company unless on the date and delivery hereof the insured is alive and in sound health" was held to be a warranty.

A warranty is a contractual obligation which enters into and becomes an integral part of the completed contract. 12 Appleman, Insurance Law and Practice, § 7341, at 440 (1943). In the early case law of this state a warranty was construed as a part and parcel of the contract of insurance and strict compliance was required before the assured was entitled to recover on the policy. Alabama Gold Life Ins. Co. v. Johnston, 80 Ala. 467, 2 So. 125 (1886). Harsh results often occurred when a clause was classified as a warranty. In some instances clauses were liberally construed to give them the label of a representation rather than a warranty in order to avoid the harshness of the early case law warranty rules. In *Alabama Gold Life* Justice Henderson M. Somerville analyzes the distinction between a representation and a warranty in the following language:

"A representation is not, strictly speaking, a part of the contract of insurance, or of the essence of it, but rather something collateral or preliminary, and in the nature of an inducement to it. A false representation, unlike a false warranty, will not operate to vitiate the contract, or avoid the policy, unless it re-

2. It should be observed that the court in *Moore* also held that the suicide within the two year period was controlling rather than the date of the institution of the suit.

lates to a fact actually material, or clearly intended to be made material by the agreement of the parties. It is sufficient if representations be substantially true. They need not be strictly or literally so. A misrepresentation renders the policy void on the ground of fraud, while a non-compliance with a warranty operates as an express breach of the contract."

In order to alleviate the harshness of the technical distinctions between warranties and representations, a statute, which now appears in Code of Alabama, 1940, and the 1958 Recompiled Code as Title 28, Section 6 [3], was enacted. That statute stated:

"No written or oral representation or *warranty* therein made, in the negotiation of a contract or policy of life insurance, or in the application therefor or proof of loss thereunder, shall defeat or avoid the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss." (Emphasis supplied)

In Empire Life Ins. Co. v. Gee, 171 Ala. 435, 55 So. 166 (1911), in assessing the meaning of this statute this court reasoned:

"Perhaps our own statute does not say what it means as clearly as it might. But by its introduction of the word 'warranties' it makes even clearer than do the statutes of those other states, to which we have referred, that it was intended to break down in a measure the technical distinction between warranties and representations, for it puts warranties and misrepresentations in a class together by providing that no misrepresentation or warranty shall defeat or avoid the policy, unless 'such misrepresentation' is made with actual intent to de-

ceive, or unless the matter misrepresented increase the risk of loss."

Thus, even though the statute speaks of both warranties and representations, it has been made clear that they are to be treated the same so that neither will avoid the policy unless the conditions of the statute are met (i. e. actual fraud or increased risk). Sovereign Camp W.O.W. v. Moore, 232 Ala. 463, 168 So. 577 (1936).

Case law of this state frowned upon the results of technical violations of warranties and established rules of construction designed to reduce forfeitures from breaches of warranties in insurance contracts. *Alabama Gold Life* stated in substance that the court should lean against that construction of the contract which will impose upon the insured the burden of a warranty, and where a warranty is recognized it must be construed with other provisions of the policy so as to modify it and give the insured the most favorable construction.

Judge Samford in Independent Life Ins. Co. v. Vann, 24 Ala.App. 93, 130 So. 520 (1930) stated in holding that the incontestable clause controlled over a warranty of good health at time of delivery, the following:

". . . It is the law, as contended by appellant, that a clause in a life insurance policy, to the effect that no obligation is assumed by the insurer, unless on the date of the delivery of the policy insured is alive and in sound health, is held to be a warranty within the terms of section 8364 of the Code of 1923. [Title 28, Section 6, Code, 1940] Authority for the foregoing is to be found in the case of Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714. The Supreme Court, in the case of Mutual L. Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A.L.R. 649, was

---

3. Repealed by Act No. 407, Acts of Alabama, 1971, Regular Session, approved August 25, 1971, effective January 1, 1972. See Title 28A, Sections 320 and 341 of Code, 1940, as amended (Recompiled 1958–1971 Cumulative Supplement) for replacement provisions.

at some pains to point out the distinction between a warranty and a condition precedent as applied to a life insurance policy, in view of section 8364 of the Code of 1923. [Title 28, Section 6, Code, 1940] Since that decision the courts have held that the representation, either in the application or policy, one or both, relating to the health of the insured at the time of the delivery of the policy, is a warranty, and not a condition precedent. *Being a warranty and a part of the contract, it must be construed in connection with the whole contract,* which stipulates: 'This policy shall be incontestable from the date of its issue except for nonpayment of premiums, actual and intended fraud,' etc." (Emphasis supplied)

■ Next, it must be realized that there is a valid distinction between a pre-existing disease or suicide clause which specifically excludes certain things from contract coverage, and a clause such as was dealt with in *Carroll,* which was not a pre-existing disease clause as such, but a clause which attempted to establish a condition to preclude the contract from ever coming into existence if the policy was not delivered to the insured in good health (i. e. a common condition precedent). The *Moore* case involved a suicide clause, which excluded coverage, and is the proper precedent for the case at bar. The *Carroll* case, on the other hand did not involve a pre-existing disease exclusion clause, but a delivery of good health provision, and is distinguishable. As stated by Couch:

"It is necessary to distinguish between the pre-existence of a disease, which has the effect of removing the subsequent disability from the coverage of the policy, and the concealment of such disease, contended to be a violation of the condition of the existence of good health at the time of the execution of the policy. As the former relates to the coverage, the proof of the pre-existence of the disease is not barred by the incontestable

period." Couch, Cyclopedia of Insurance Law, § 72.65 at 81–82 (1968).

The clause in *Carroll* was clearly an attempt to establish a condition precedent on the part of the insurer. However, this court established that a "delivery in good health" clause, although a condition precedent in most states, is to be given the legal effect of a warranty in Alabama. This was the holding in Mutual Life Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440 (1922), and it has been rather firmly fixed as law in Alabama by subsequent cases. E. g. Reliance Life Ins. Co. v. Sneed, 217 Ala. 669, 117 So. 307 (1928); Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714 (1929); Independent Life Ins. Co. v. Vann, supra.

■ At the time the *Carroll* case was decided, by case law, a condition of delivery in good health had the legal effect of a warranty, and, by statute, a warranty was treated the same as a representation so that avoidance of a policy on the grounds that the insured was not in good health at delivery of the policy would have to be based on actual fraud or an increased risk.

■ As a warranty, the delivery in good health provision is then, by definition, a part of the contract. The precise question involved in *Carroll* was whether, since it is a part of the contract, a material breach of the warranty of delivery in good health is cut off as a defense by the incontestability clause. The court held in *Carroll,* that the incontestable clause did preclude the assertion of breach of the good health warranty as a defense. Such holding was consistent with the general view of the operation of the incontestable clause—its principal function is to cut off defenses such as a breach of warranty or misrepresentation that go to the existence of the policy after the policy has been in force and effect for a period of time.

The issue in *Moore,* on the other hand, did not deal with a warranty or a repre-

sentation of any kind, but dealt with a provision which excluded coverage of a specified risk—i. e. death by suicide. There was no attempt to avoid the policy in *Moore* as was the case in *Carroll*, to the contrary, the insurer admitted the existence of the contract and relied on a provision in the contract which clearly showed that the loss claimed was outside the risk assumed by the insured. Thus, *Moore* is clearly distinguishable from *Carroll*.

In John Hancock Mut. Life Ins. Co. v. Markowitz, 62 Cal.App.2d 388, 144 P.2d 899 (1944), the court was faced with a situation similar to that of the case under review, wherein the insured had contracted a disease prior to the issuance date of the policy. The policy contained a pre-existing disease clause, as well as an incontestable clause. The California court resolved the matter by allowing the insurer to assert the defense contained in the pre-existing disease clause, notwithstanding the policy's incontestable clause, stating:

"[T]he courts have recognized that an incontestable clause does not operate to extend the coverage of a policy to a disease contracted before the issuance of the policy."

The lower court's decree in *Markowitz*, which was affirmed, contained the following language:

"[S]uch disability [i. e., pre-existing disease], if any, was not and is not a disability insured against in said policies, and was a risk not assumed under said policies of insurance, and plaintiff company never has been and is not now liable for or required to pay to defendant any disability benefits . . .".

This approach to the construction of the incontestable clause has been adopted by a majority of other courts which have considered the question. Apter v. Home Life Ins. Co. of New York, 266 N.Y. 333, 194 N.E. 846 (1935); John Hancock Mut. Life Ins. Co. v. Hicks, 43 Ohio App. 242, 183 N.E. 93 (1931); Palumbo v. Metropolitan Life Ins. Co., 293 Mass. 35, 199 N.E. 335 (1935); Sanders v. Jefferson Standard Life Ins. Co., 10 F.2d 143 (5th Cir. 1925); Flannagan v. Provident Life and Accident Ins. Co., 22 F.2d 136 (4th Cir. 1927); Wright v. Philadelphia Life Ins. Co. of Philadelphia, Pa., 25 F.2d 514 (E.D.S.C. 1927); Scarborough v. American Nat. Ins. Co., 171 N.C. 353, 88 S.E. 482 (1916); Myers v. Liberty Life Ins. Co., 124 Kan. 191, 257 P. 933 (1927); Childress v. Fraternal Union of America, 113 Tenn. 252, 82 S.W. 832 (1904); Brady v. Prudential Ins. Co., 168 Pa. 645, 32 A. 102 (1895); Woodbery v. New York Life Ins. Co., 223 App.Div. 272, 227 N.Y.S. 699 (1928); Washington Nat. Ins. Co. v. Burch, 270 F. 2d 300 (5th Cir. 1959); Riley v. Industrial Life & Health Co., 190 Ga. 891, 11 S.E.2d 20 (1940); National Life & Accident Insurance Co. v. Chapman, 106 Ga.App. 375, 127 S.E.2d 157 (1962); Posner v. New York Life Ins. Co., 56 Ariz. 179, 106 P.2d 488 (1940); Head v. New York Life Ins. Co., 43 F.2d 517 (10th Cir. 1930); Stean v. Occidental Life Ins. Co., 24 N.M. 346, 171 P. 786 (1918); Jolley v. Jefferson Standard Life Ins. Co., 199 N.C. 269, 154 S.E. 400 (1930); Perilstein v. Prudential Insurance Co., 345 Pa. 604, 29 A.2d 487 (1943); Pacific Mutual Life Ins. Co. v. Fishback, 171 Wash. 244, 17 P.2d 841 (1933); Gordon v. Unity Life Ins. Co., 30 So.2d 880 (La.App.1947); Fohl v. Metropolitan Life Ins. Co., 54 Cal.App.2d 368, 129 P.2d 24 (1942); Pekras v. Prudential Ins. Co., 291 Ill.App. 597, 10 N.E.2d 704 (1937); Mills v. Metropolitan Life Ins. Co., 210 N.C. 439, 187 S.E. 581 (1936); Prudential Ins. Co. v. Elias, 188 Okl. 420, 109 P.2d 815 (1940); Mayer v. Prudential Life Ins. Co., 121 Pa. Super. 475, 184 A. 267 (1936); Guise v. New York Life Ins. Co., 127 Pa.Super. 127, 191 A. 626 (1937).

In the case of National Life & Accident Insurance Company v. Chapman, supra, the

policy in question contained the following incontestable clause:

"[This] policy shall be incontestable after it has been in force during the lifetime of the insured for a period of one year from the date of issue, except for non-payment of premiums . . .".

The policy also contained a pre-existing disease clause similar to that found in the policy in the case under review.

The Georgia court rejected the insured's contention that the incontestable clause precluded the insurer from setting up pre-existing disease as a defense to the insured's suit on the policy, stating:

"[S]uch provision [i. e., incontestable clause] does not mean that the insurer cannot contest whether a hazard insured against has or has not occurred, or *whether a hazard is or is not within the scope of the risks covered by the policy.*" (Emphasis added).

Williston is in accord with the above cases, for he says that "[i]t is settled that if the disability arose prior to the issuance of the policy it is not to be deemed to be covered by the policy; therefore, the company can contest liability for disability benefit payments." Williston also uses this language:

"After an initial period of uncertainty, most courts today hold that an incontestability clause forecloses contests of the validity of the policy, as intended, but *does not preclude the insurer from defending on the ground that the loss incurred was expressly excluded from or clearly never covered under* the terms of the policy; i. e., the policy is a perfectly good policy and completely incontestable (except for rights expressly reserved therein), *but it does not and never did, cover the particular casualty on which the plaintiff is suing.*" (Emphasis added). 7 S. Williston, Williston on Contracts § 912 (3d ed. 1963).

Williston also supports the position taken by this court in *Moore,* supra, that "[a]n exclusion of a particular coverage from a policy is not a condition precedent to liability under the policy, therefore the insurer's refusal to pay a loss claim which is not embraced within the coverage of the policy is not a 'contest' of the policy, therefore it can be asserted before or after any incontestability clause has run." 7 S. Williston, Williston on Contracts § 913 (3d ed. 1963); McCann v. National Life & Accident Ins. Co., 226 S.W.2d 177 (Tex.Civ. App.1949); and cases cited, supra.

This view is also supported in 43 Am. Jur.2d § 1160, wherein it is stated that "an insurer does not contest a policy within the meaning of an incontestable clause where the insurer resists payment upon the ground that the loss for which claim is made is not within the coverage of the policy, or as otherwise stated, within the risk assumed by the insurer; . . . accordingly, an incontestable clause does not operate to prevent the insurer from defending on the ground that the loss is not covered by the policy." See cases cited therein.

This same view as to what is a "contest" of the policy is expressed in 18 G. Couch, Couch on Insurance § 72:101 (2d ed. 1968), as follows:

"The fact that the insurer denies liability because of an exception in the policy does not constitute a contest . . . .

"The insurer's resistance of a claim for a loss which by the express terms of the policy is not assumed by the insurer is not a contest within the meaning of an incontestable clause."

Couch also states that "[t]he fact that a policy has become incontestable does not . . . affect the rule that the insurer's liability is measured by the terms and pro-

visions of the policy itself." Couch, supra, § 72:59. It is further said in § 72:61 that:

"An incontestable clause does not bar the insurer from proving that the loss was not covered by the terms of the policy.

"Expiration of the period of incontestability does not close the door to the defense that the contingency upon which liability depends has not occurred.

"An incontestable clause does not preclude the insurer from asserting that the cause of death was not within the coverage of the policy."

Commenting upon the effect of specific exception clauses, Couch, in § 72:63 says:

"The incontestable clause does not bar the insurer from denying liability on the ground that there is no coverage because of an exception contained in the policy.

"An incontestable clause does not preclude the insurer from seeking to uphold plain provisions of the contract, such as those exempting it from liability for specified risks."

Addressing himself to the specific exception of a pre-existing disease clause, Couch says in § 72:65:

"The incontestable clause does not determine the scope of the risk assumed so as to bring within the coverage an expressly excepted risk

. . . . . .

"An incontestable clause does not relieve the claimant of the duty to establish his right of recovery in the first instance under the specific language of the policy, as where he must show that the insured's illness arose after the attachment of the policy."

■ In conclusion then, what this court is saying is this: that there is no conflict between the incontestability clause and the pre-existing disease exclusion clause, as the latter constitutes an exception to the former, general clause; that the insurer's insistence that it is not liable under the policy by reason of its exclusion contained in the pre-existing disease clause, is not a "contest" of the policy within the meaning of the incontestable clause; and that complete and irrevocable loss of sight of both eyes which results from a disease contracted by the insured before the issuance date of the policy was a risk which the insurer had never assumed in this case at bar.

While the case under review was tried in the trial court before the effective date of the new insurance code, it is interesting to note that Title 28A, Section 360 of the Code of Alabama, 1940, as amended (Recompiled 1958—1971 Pocket Supplement) contains the following language pertaining to life insurance policies and annuity contracts:

"§ 360. Effect of incontestability clause in life insurance policy or annuity contract.—A clause in any policy of life insurance or annuity contract providing that such policy or contract shall be incontestable after a specified period shall preclude only a contest of the validity of the policy or contract, and shall not preclude the assertion at any time of defenses based upon provisions in the policy or contract which exclude or restrict coverage, whether or not such restrictions or exclusions are excepted in such clause."

The opinion of the Court of Civil Appeals is due to be affirmed.

Affirmed.

MERRILL, HARWOOD, BLOODWORTH, McCALL and FAULKNER, JJ., concur.

COLEMAN, MADDOX and JONES, JJ., dissent.

COLEMAN, Justice (dissenting):

The policy sued on contains two provisions which give rise to the controversy. The provision first appearing in the policy is herein sometimes referred to as Clause 1, and the second provision will be referred to as Clause 2.

Clause 1 recites in pertinent part as follows:

"Benefits for Loss of Eyesight or Limbs —Upon receipt during the lifetime of the Insured of due proof that the Insured has suffered (a) . . . (b) the complete and irrecoverable loss of sight of both eyes prior to attainment of age 70 . . . total and permanent disability shall be deemed to exist, and the Company, upon surrender of the policy, will pay, in . . . case (b), a sum equal to twice the Amount of Insurance . . . all subject to the provisions of the policy.

" . . . . . . . . . .

"In all cases, benefits under this provision shall be allowed only if the loss (1) occurs while no premium is in default beyond the grace period, and (2) is caused solely by disease or injuries contracted or sustained after the Date of Issue. Such benefits shall not be allowed if any such loss is intentionally self-inflicted or if it results from an act of war (see Definition on this page) while the Insured is in the armed forces of any country, international organization or combination of countries."

The defendant contends that it is not liable because the plaintiff's loss of eyesight was not "caused solely by disease or injuries contracted or sustained after the Date of Issue."

Clause 2 recites:

"Incontestability—This policy shall be incontestable one year from the Date of Issue, except for non-payment of premiums."

Plaintiff contends that there is a conflict between Clause 1 and Clause 2 and that the policy must be construed in favor of the insured, the plaintiff.

Plaintiff relies on Independent Life Ins. Co. v. Carroll, 222 Ala. 34, 130 So. 402, wherein plaintiff sued as beneficiary in a policy of life insurance. In opinion on prior appeal (219 Ala. 79, 121 So. 88) it is said that insured died of apoplexy. In the second appeal (222 Ala., 130 So.) it is said that defendant interposed pleas setting up a breach of warranty as to the condition of health of insured to effect that at date of issue of the policy she had a named disease that materially increased the risk of loss, but failed to allege actual or intended fraud. The policy contained an incontestable clause as follows:

" . . . 'This policy shall in incontestable from date of issue except for non-payment of premium, actual and intended fraud or for engaging in military or naval service in time of war, without permission from the company; if insured died by his or her own hand within one year from date thereof, whether sane or insane, or resulting from a crime or any attempt thereat only one-half of the premium actually paid to the company will be the company's liability hereunder.' . . . " (222 Ala. at 36, 130 So. at 403)

The policy in *Carroll* contained a sound health clause to effect that no obligation was assumed by insurer unless on date of issue of policy insured was in sound health. This court held that the incontestable clause could not be defeated by the sound health clause. This court rejected defendant's argument that by breach of the warranty of sound health there was no contract upon which the incontestable clause could rest. This court said:

"Appellant seeks to avoid the effect of the language of the incontestable clause

by reference to another clause in the policy to the effect that 'no obligation is assumed by the company unless on the date and delivery hereof the insured is alive and in sound health,' etc. But it has been frequently held that such a clause is in legal effect a warranty (Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714), and constituting a part of the policy is to be read in connection with the whole. The usual rules of construction governing the interpretation of insurance policies are applicable to the construction of incontestable clauses therein, and if there is reasonable doubt as to the extent of the application of the incontestable clause it must be solved in favor of the beneficiary. 37 Corpus Juris, 540. The argument that by a breach of such warranty there was in fact no contract upon which an incontestable clause could rest, would but permit the phraseology of one clause to defeat the other, though both constitute parts of the same contract. The insistence is unsound." (222 Ala. at 36, 37, 130 So. at 404)

The clause relied on by insurer in *Carroll* recites:

" . . . 'no obligation is assumed by the company unless on the date and delivery hereof the insured is alive and in sound health,' etc. . . ." (222 Ala. at 36, 130 So. at 404)

As here material and pertinent, the clause relied on by insurer in the instant case recites:

". . . benefits under this provision shall be allowed only if the loss . . . (2) is caused solely by disease . . . contracted . . . after the Date of Issue."

With respect to the question here presented, I am not able to distinguish the sound health clause in *Carroll* from the last quotation above taken from Clause 1 in the instant case. In no respect here material is there any difference between the incontestable clause in *Carroll* and the incontestable clause here. If there is any conflict or ambiguity between Clause 2 and Clause 1 in the instant case, that issue must be resolved in favor of the beneficiary, the plaintiff. See *Carroll,* supra.

The Court of Appeals of Alabama in *Vann,* infra, held that a sound health clause, that " 'No obligation is assumed by the company unless on . . .' " the date of delivery insured is in sound health, did not create a defense where the requirement of sound health was not mentioned in the incontestable clause as an exception on which a contest could be founded after expiration of the contestable period. The court said:

". . . It is the law, as contended by appellant, that a clause in a life insurance policy, to the effect that no obligation is assumed by the insurer, unless on the date of the delivery of the policy insured is alive and in sound health, is held to be a warranty within the terms of section 8364 of the Code of 1923. Authority for the foregoing is to be found in the case of Independent Life Ins. Co. v. Seale, 219 Ala. 197, 121 So. 714. The Supreme Court, in the case of Mutual L. Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A.L.R. 649, was at some pains to point out the distinction between a warranty and a condition precedent as applied to a life insurance policy, in view of section 8364 of the Code of 1923. Since that decision the courts have held that the representation, either in the application or policy, one or both, relating to the health of the insured at the time of the delivery of the policy, is a warranty and not a condition precedent. Being a warranty and a part of the contract, it must be construed in

connection with the whole contract, which stipulates: 'This policy shall be incontestable from the date of its issue except for non-payment of premiums, actual and intended fraud,' etc. The whole policy was incorporated and made a part of the complaint. Therefore a plea which sets up as a defense that clause in the policy which says: 'No obligation is assumed by the company unless on the date and delivery hereof the insured is alive and in sound health,' etc., must go further and aver actual and intended fraud. . . ." Independent Life Ins. Co. v. Vann, 24 Ala.App. 93, 95, 96, 130 So. 520, 522.

The Court of Appeals of New York held that under an incontestability clause, the insurer was barred from defending on a ground not enumerated in the exceptions stated in the policy as grounds for contest after the close of the contestable period.[1] The court said:

". . . The incontestability clause applies to the policy as a whole. 'It is not a stipulation absolute to waive all defenses and "to condone fraud." On the contrary, it recognizes fraud and all other defenses but it provides ample time and opportunity within which they may be, but beyond which they may not be, established. It is in the nature of and serves a similar purpose as statutes of limitations and repose, the wisdom of which is apparent to all reasonable minds.' Wright v. Mutual Benefit Life Ass'n, 118 N.Y. 237, 243, 23 N.E. 186, 187. It 'is not a mandate as to coverage, a definition of the hazards to be borne by the insurer. It means only this, that within the limits of the coverage the policy shall stand, unaffected by any de-

---

1. "The life policy proper contained the provision that 'This policy will be incontestable after it has been in force during the lifetime of the insured for a period of two years from the date of its issue, except for non-payment of premiums; provided, however, that any provisions or conditions relating to benefits in event of total and permanent disability or accidental death contained in any supplementary agreement attached hereto shall become void for the causes and under the conditions stated therein.' The policy and supplementary agreement were in full force and in good standing with all required premiums fully paid more than two years after the date of issue thereof. No grounds are stated in the policy proper by which liability under the supplementary agreement may be contestable after the period of two years after date of issue except the nonpayment of premiums. During disability, payment of premiums was agreed to be waived as above stated. The only 'causes' and 'conditions' stated in the supplementary agreement for and under which the 'provisions or conditions relating to benefits in event of total and permanent disability * * * shall become void' are: (1) failure of the insured to furnish proof of the continuance of the disability and to permit examinations by the company's duly appointed medical examiner at such time or times as may be required by the company during the first two years after the receipt of proof of the disability; (2) recovery of the insured from his disability; (3) in the event the disability results 'from causes arising during military or naval service in time of war, or from self-inflicted injury, or from participation in underground work, or in aerial or submarine expeditions or operations, either as a passenger or otherwise.' None of those 'causes' and 'conditions' have any applicability under the facts in this case. It thus appears that fraud in the inception of the contract is not stated to be one of the 'causes' or 'conditions' for or under which the supplementary agreement shall become void. There is no reservation in the policy proper or in the so-called supplementary agreement of fraud in the inception of the contract as a ground for declaring the contract void if asserted more than two years after the date of issue of the policy. It is significant that the plaintiff stated at length and in detail the 'causes' and 'conditions' under which the supplementary agreement should become void. Had it been the intent of the plaintiff to except fraud in the inception of the contract from the operation of the two-year incontestability clause, it would have been a simple matter to have inserted a provision to that effect which it had the power to do; if there is any ambiguity in the meaning of the provisions of the contract, all doubt must be resolved in favor of the insured. Janneck v. Metropolitan Life Ins. Co., 162 N.Y. 574, 57 N.E. 182; Stroehmann v. Mutual Life Ins. Co., 300 U.S. 435, 439, 57 S.Ct. 607, 81 L.Ed. 732." Berkshire Life Ins. Co. v. Weinig, 290 N.Y. 6, 8, 9, 10, 47 N.E.2d 418, 420, 421.

fense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken.' Matter of Metropolitan Life Ins. Co. v. Conway, 252 N.Y. 449, 452, 169 N.E. 642. It is directed against a claim that the contract has been obtained by fraudulent misrepresentations or that there is a breach of a condition precedent or subsequent and absolutely bars rescission after the period within which liability may be contested. Columbian Nat. Life Ins. Co. v. Hirsch, 267 N.Y. 605, 196 N.E. 602; Killian v. Metropolitan Life Ins. Co., 251 N.Y. 44, 49, 166 N.E. 798.

"What Weinig bought, and what he had a right to understand that he bought, was a policy of life insurance with provisions for disability and double indemnity benefits, incontestable for any cause whatsoever after two years from the date of issue of the policy except for those reasons which were specifically stated and enumerated in the supplemental rider attached to and made a part of the policy.

"The judgment appealed from should be affirmed, with costs." Berkshire Life Ins. Co. v. Weinig, 290 N.Y. 6, 10, 47 N.E.2d 418, 421.

This court has said:

"It is the duty of the courts to take the words of an insurance policy as they are found in it, and as persons with usual and ordinary understanding would construe them when used to express the purpose for which they were employed. Holloway v. State Farm Mutual Automobile Ins. Co., 275 Ala. 41, 151 So.2d 774; Franklin Life Ins. Co. v. Lewis, 36 Ala.App. 313, 55 So.2d 518." Alabama Farm Bureau Mut. Cas. Ins. Co. v. Goodman, 279 Ala. 538, 541, 188 So.2d 268, 270.

In the ordinary meaning given to the language in the policy here, a reasonable man buying this policy may well understand that for one year after date of issue, he cannot recover for a loss caused by a disease which he had at date of issue, but he could and probably would reasonably understand that after one year has passed, the policy cannot be contested on the ground that he had a pre-existing disease which caused the loss.

The policy was prepared by insurer. A conflict or at least an ambiguity is created by the two clauses mentioned. Under the well recognized rule of construction, where a conflict or ambiguity appears in a writing, the writing is to be construed against the party who wrote it, in this case, the insurer.

The majority make a distinction between a contest of liability based on the ground of breach of warranty with the alleged consequence of no coverage, and a contest based on some other ground. The ordinary reasonable man reading the instant policy would not make such a distinction. If the insurer desired to make such a distinction it could have done so by appropriate words in the policy.

Being of opinion that Clause 1 and Clause 2 are in conflict, I would construe the policy in favor of the insured and reverse the decision of the Court of Civil Appeals. Therefore I dissent.

MADDOX, J., concurs.